Mr. Justice Hall
delivered the opinion of the Court.
The parties appear here in the same order as in the trial court. We refer to them as plaintiffs and defendants, or by name.
The plaintiffs commenced this action on April 8, 1963. In their complaint they allege that they are the owners of some 950 acres of lands illegally included in the de *471 fendant district, which was organized December 31, 1959. They sought an injunction prohibiting the district from conducting a proposed election on the question of authorizing the issuance of bonds in the amount of $315,000.00 and, in the event of a favorable vote, subjecting all lands within said district to a lien for the payment of said bonds. They also sought to have their 9'50 acres of lands excluded from the district and adjudged to be exempt from any and all district obligations. The relief sought is equitable in nature.
The defendant district answered, admitting most of the allegations of fact set forth in the complaint. It also alleged that Section 8, Chapter 199, Session Laws 1955, providing for the exclusion of certain lands from the district, is unconstitutional. As a further defense, it alleged that:

“FOR A FOURTH DEFENSE:

“The Plaintiffs herein, and each of them, are guilty of laches, for the reason that the said Plaintiffs, and each of them, have been a part of, and included in the Defendant District since the date of its organization by this Honorable Court, and since such time, have been subject to the lien of taxes levied by said Defendant District for the years 1960, 1961 and 1962, and that the Plaintiffs have paid said taxes, and cannot now be heard to complain that they, or any of them, should not continue to be included in said Defendant District.”
The statutes governing the organization of recreation districts is found in 1960 Perm. Supp., C.R.S. ’53, 89-2-1 through 30, being Chapter 199, Session Laws 1955. Pertinent portions of Section 8 thereof provide:
“Any provision to the contrary notwithstanding, no tract or parcel of real estate * * *, or any tract of farm or ranch land of forty acres or more used primarily for agricultural purposes, shall be included in any district organized under this article without the written consent of the owners thereof. * * *. If, contrary to the provisions of this section, any such tract * * * is included *472 in any district, the owners thereof, on petition to the court having jurisdiction, shall be entitled to have such property excluded from the district free and clear of any contract, obligation, lien or charge to which it may or might have been liable as a part of the district.”
Trial was to the court, and at the close thereof the court stated:
“THE COURT: You have got a problem. These two decisions (Amer. Tel. and Tel. Co. vs. Animas Mosquito Control District and Interstate Gas Company, a Delaware Corporation vs. Sable Water District, a quasi-municipal District) handed down fit squarely within the provisions of this section. There isn’t any argument in the world about it. You have got the same reasoning, the same theories that are submitted in these two decisions handed down by Mr. Hall, such pertaining to. this Act here. 89-12-8. There isn’t any question about it in the Court’s mind.
“Upon the decisions and reasoning set forth, the Court finds that this Act is unconstitutional. It also finds that Section 2 [Subsection 2] of this Act is unconstitutional because it is interwoven with No. 1 [Subsection 1]. You could not segregate them. They have reference to each other.”
Formal judgment was entered April 18, 1963, dismissing the complaint.
Plaintiffs are here by writ of error and contend, contrary to the views expressed by the trial judge, that the exclusion section of the act is constitutional and that their lands cannot be included in the district or subjected to any of the burdens thereof.
Plaintiffs also anticipate the defense of “laches” and contend that their lands were never legally a part of the district, and that provisions of 1960 Perm. Supp., C.R.S. ’53, 89-12-8, for removal of lands from the district are designed to “clearing the records” so that they will speak the truth, namely, that the land is not and *473 never has been a part of the district and is free of any district obligations.
The trial court, in holding Section 8 unconstitutional, relied entirely on the pronouncements of this court in Mountain States Telephone and Telegraph Company v. Animas Mosquito Control District, 152 Colo. 73, 380 P.2d 560, and Colorado Interstate Gas Company v. Sable Water District, 152 Colo. 89, 380 P.2d 569, both decided April 8, 1963.
Here, counsel direct most of their discussion to the question as to whether the decisions in those two cases are controlling or warrant the trial court’s holding that the exclusion clause is unconstitutional.
We conclude that the cause before us may be determined on the merits and without need of passing on the constitutionality of Section 8.
It is a well recognized rule that courts will not pass on the constitutionality of a law unless necessary for a decision of the cause under consideration.
In 11 Am. Jur., Constitutional Law, §§93 and 94, it is stated:
“§ 93. * * * One of the most firmly established doctrines in the field of constitutional law is to the effect that a court will pass upon the constitutionality of a law only when necessary to the determination upon the merits of the cause under consideration. * * *”
“§ 94. * * * It is settled as a general principle that courts will not pass on the constitutionality of an act of the legislature if the merits of the case in hand may be fairly determined otherwise without so doing. * *
In State v. American Co., 117 Colo. 312, 186 P.2d 779, this court said:
“Our disposition of this action is such that we are not called upon to, and do not, determine any constitutional question because of our oft announced and well settled practice to not do so unless necessary for a determination of the questions presented.”
We adhere to the foregoing pronouncements and re *474 frain from expressing any opinion on the constitutional question presented and argued by counsel.
In this case we conclude that the rights, if any, of the plaintiffs, the Haydens, and their successors in interest, the Kelleys, to have any of the lands involved excluded from the district have been lost under the equitable doctrine of laches.
In adopting Section 8 it is clear that the legislature anticipated that lands which it stated shall not be included in any district might, contrary to such admonition, be included in a district. In such event, provision was made whereby a landowner could, at his election, obtain judicial relief from the effects of having his lands improperly included in the district. The legislature did not fix or limit the time within which one might apply for such relief. Statutes of limitations and the doctrine of laches do limit the times within which legal and equitable relief may be obtained.
Assuming, but not deciding, that Section 8 of the statute is constitutional, it is clear that Haydens had a right to have their 950 acres of admittedly agricultural lands not included in the district. This right, however, was one that could be expressly waived by giving the statutory “written consent” to the inclusion. It could be lost by lapse of time, the statute of limitations, or by lapse of time coupled with inaction or actions, inconsistent with their present assertion of the right to be excluded from the district and when the exercise of said right would be inequitable and prejudicial to the rights of others who have proceeded on the assumption that the right to have their lands excluded would not be asserted.
The plaintiffs John Okie Hayden and St. Claire Okie Hayden were, at the time the district was formed, the owners of all of the property which the plaintiffs in this action sought to have the court exclude from the district.
Early in 1960 the plaintiffs Richard E. Kelley and Marjorie E. Kelley acquired title to some 500 acres of *475 the total of 950 acres owned by Haydens. At that time all of the 950 acres had been included within the boundaries of the district and were a part thereof. At the time the Kelleys purchased the 500 acres, they obtained from Haydens an option to purchase the balance of their lands and apparently have since been in possession of the whole 950 acres and paying taxes thereon, including taxes levied for district purposes. Out of the 500 acres the Kelleys have incorporated about 100 acres thereof in three subdivisions, one of which contains about 100 completed homes, about fifty of which have been sold and are occupied by the owners thereof. The other two subdivisions are in different stages of development.
The plaintiffs do not contend that the district was not organized according to statutory authority, nor do they deny that during the period December 31, 1959, to the date of the commencement of this Action, April 8, 1963, the district functioned as a “* * * governmental subdivision of the state of Colorado and a body corporate with all the powers of a public or quasi-municipal corporation. * *
Organization of recreational districts is purely statutory. Organization proceedings are initiated by the filing with the district court of a petition signed by not less than fifteen percent of the taxpaying electors of the proposed district. The statute provides that:
“(2) (a) The petition shall set forth:
❖ * *
“(e) A general description of the boundaries of the district * * *, with such certainty as to enable a property owner to determine whether or not his property is within the district.”
On filing of the petition the court enters an order fixing the place and time “* * * not less than twenty days nor more than forty days after the petition is filed, for hearing thereon. * * *.”
Notice of the pendency of the petition and the time *476 and place of hearing is given by publication consisting of three consecutive weekly publications in a newspaper of general circulation in the district.
The statute further provides that the district court in which the petition is filed shall have exclusive jurisdiction coextensive with the boundaries of the district and of the real property proposed to be included therein.
Further provision is made for the time, place and manner for filing protests to the organization of a district, and the disposition of such protests, and for entry of an order either dismissing the petition or declaring the district organized and, if organized, defining the boundaries thereof.
Further provision is made that within thirty days after a district has been organized the clerk of the court shall cause to be filed with the county clerk and recorder the findings and decree incorporating the district. The findings and decree define the boundaries of the district with such certainty as to enable a property owner to determine whether or not his proprty is within the district.
Thus it appears that Haydens had actual or constructive notice of the proposal to form the district at least twenty days prior to December 31, 1959; they had notice that their lands were included in the proposed district; they had notice by publication of the time and place of a hearing to be had as a prerequisite to the entry of a decree organizing the district; they had notice of the decree which subjected their lands to the burdens of the district and granted privileges and benefits to those whose lands were in the district. This decree was recorded in Jefferson County.
The Kelleys, as successors in interest to the Haydens, having acquired the Hayden property in 1960, after the decree organizing the district was entered and recorded, acquired the property with notice, and are chargeable with notice of the fact that the property purchased was included in and a part of the district. Plaintiffs are also *477 chargeable with notice of the statutes which provide that certain properties shall not be included within any district without the written consent of the owners thereof. They are also chargeable with notice of the statutory provisions for having properties included in a district “contrary to the provisions” of the statute, excluded therefrom.
The Haydens, then owners of the lands, so far as the record discloses, made no protest to the proposal for organization of the district. They never notified anyone that their lands consisted of more than forty acres or that they owned “farm or ranch” lands “used primarily for agricultural purposes.”
The district, pursuant to authority granted by Section 15 of the act, caused to be levied and collected ad valorem taxes “on and against all taxable property within the district * * *” for the taxable years 1960, 1961 and 1962. The Kelleys paid all of the taxes levied against the unplatted acreage and also on the unsold lots in three subdivisions containing about 100 of the 950 original Hayden acres. Presumably those fifty or more persons who had acquired from the Kelleys their homes in one of the subdivisions paid the district taxes on their respective homes.
Though lapse of time in asserting an equitable right may not in itself be grounds for denying relief, certainly delay of more than two years, coupled with the fact that during that period of time the district was functioning on the assumption that the Hayden lands were lawfully within and a part of the district, gives rise to the doctrine of laches. The fact that the district had made provision for an election and the possible issuance of bonds in the amount of $315,000.00, designed to provide funds for erection of recreational facilities within the district, is an added reason for invoking the doctrine. During this period of time, no doubt some, if not all, of the fifty or more occupants of new residences constructed by the Kelleys in one of the sub *478 divisions acquired their properties and established their homes, with actual or constructive notice that their properties were included within this recreational district, subject to all of the burdens and entitled to all of the benefits to accrue therefrom.
The foregoing constitutes good grounds for denying equitable relief.
In 30 C.J.S. 520, Equity, § 112, it is stated:
“Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay; such delay in enforcing one’s rights as works disadvantage to another; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; acquiescence in the assertion of adverse rights and undue delay on complainant’s part in asserting his own, to the prejudice of the adverse party.”
Plaintiffs offer no excuse for permitting their lands to be included in the district, nor do they seek to explain their conduct in recognizing the district and its obligations and waiting for over two years to exercise a right which could have been exercised even prior to the organization of the district. Had they sought to exercise their right earlier the district might never have been organized; had their lands been excluded, other lands might have been substituted therefor, the district might have proceeded on a less expansive program, purchasers of homes might have declined to buy in a dis *479 trict of less acreage, those that did buy might have bought on the strength of the fact that the home they were acquiring was within and a part of the district, and that they were entitled to the benefits thereof.
In Western Motors v. Carlson, 138 Colo. 404, 335 P.2d 272, this court said:
“The essential element of laches is an unconscionable delay in enforcing a right under circumstances usually involving a prejudice to the one against whom the claim is asserted. Loveland Camp No. 83 v. Woodmen (1941), 108 Colo. 297, 116 P. (2d) 195.”
In Canal and Reservoir v. Tenney, 57 Colo. 14, 139 Pac. 1110, it is stated:
“It is settled law that if a party by conduct has intimated that he consents to an act which has been done, or will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he can not question the legality of the act he has so sanctioned to the prejudice of those who have acted on the fair inference to be drawn from his conduct. * *
In Greeley Co. v. McCloughan, 140 Colo. 173, 342 P.2d 1045, we said:
“The Agreement having been of record for many years, these plaintiffs had legal notice of their claimed right to a full 140 inches, and cannot now be heard to disclaim all knowledge of the terms. The strongest right or equity may be abandoned by conduct and no relief can be granted in the face of unreasonable delay. Duncan, infra.
“In McDermott v. Bent Irr. Dist. (1954), 130 Colo. 44, 272 P. (2d) 995, it was stated:
“ ‘It is not in the interest of the public good to enforce such ancient claims after so many years have elapsed, and after so many complications have arisen, unless some very good reason is given for the delay.’ ”
From the record it appears, and without doubt, that *480 the district, for more than two years, had conducted its business relying on the adjudicated fact that the 950 acres of Hayden lands and the parts thereof that had been subdivided and the lots on which homes had been constructed and occupied were a part of the district, all subject to taxation to defray the expenses of the district.
It would be highly inequitable at this late date to permit plaintiffs to exercise an alleged right which, if exercised, would have a bad effect on other owners of property, adversely affect the district, and possibly render the same wholly undesirable or ineffective.
Plaintiffs remained silent when equity and good conscience required them to speak. By payment of taxes they approved the functioning of the district and waived their rights to object.
For the foregoing reasons, rather than those assigned by the trial judge, the judgment is affirmed.