No. 21510.

PAUL W. SWISHER AS COMMISSIONER OF AGRICULTURE
OF THE STATE OF COLORADO, ET AL. *v.* OTIS P. BROWN
AND GEORGE RUSS.
(402 P.2d 621)

Decided June 7, 1965.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, CLIFTON A. FLOWERS, Assistant, RUSSELL P. KRAMER, Special Assistant, for plaintiffs in error.

GELT & GROSSMAN, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to the parties as they appeared in the trial court where the plaintiffs in error were defendants and the defendants in error were plaintiffs.

The action was brought by the plaintiffs for a declaratory judgment with reference to the constitutionality of the Colorado Agricultural Marketing Act of 1939 (C.R.S. '53, 7-3-1 to 23).

The amended complaint filed by the plaintiffs contains three separately stated claims. The first claim involves an attack upon the constitutionality of the Colorado Marketing Act as a whole. The second claim is an attack upon certain marketing orders which were entered by the defendant Swisher pursuant to the authority vested in him under the statute, insofar as such orders purported to impose restrictions upon the production and marketing of lettuce. The third claim consists of an attack upon the provisions of a specific Marketing Order which purported to require the destruction or discing of a part of the 1962 lettuce crop.

The defendants filed their answer in which the issuance of the Marketing Orders by the defendant Swisher was admitted; the contention that the statute is unconstitutional was denied; and it was affirmatively alleged that "plaintiffs will in fact benefit from compliance with said orders, but defendants admit that if said orders are unconstitutional and void, immediate and irreparable injury would result therefrom."

The parties stipulated that the cause would first be submitted to the trial court upon the questions of law raised by the first statement of claim. In this connection the trial court in its findings made the following statement:

"The parties have stipulated that this controversy would be submitted on the first statement of claim at-

tacking the constitutionality of the law itself; and that in the event of an adverse decision on the first claim, then the second and third claims would be tried and determined in due course. Accordingly, this decision will be confined to the question of the constitutionality of the Colorado Agricultural Marketing Act of 1939, as amended, leaving the issues made up on the second and third claims for later determination, if necessary."

The trial court aptly summarized the issues framed by the pleadings with reference to the first claim as follows:

"The complaint is for a declaratory judgment and alleges that the plaintiffs, residents of Saguache County, Colorado, are producers and handlers of lettuce in the San Luis Valley of Colorado, and as such, are vitally interested in the lettuce marketing order allegedly adopted on or about August 15, 1962, by some of the producers, handlers and distributors of lettuce grown in said Valley. That the plaintiffs are informed that on August 15, 1962, defendant Swisher, as Commissioner of Agriculture for the State of Colorado, issued a purported lettuce marketing order bearing Docket No. A-16 for the purpose of regulating the marketing of lettuce produced in the Counties of Alamosa, Rio Grande, Saguache, Costilla and Conejos; and that thereafter, on or about August 21, 1962, the defendant Swisher commenced executing and issuing purported orders establishing regulations for harvesting, packing and marketing of head lettuce, copies of which orders are attached to the complaint. That said orders, among other things, required plaintiffs to disc up or otherwise mutilate or not ship, market and sell a percentage of their lettuce crop planted and being in their fields, further dictating to plaintiffs and other lettuce producers the days and times when they may cut, harvest and sell lettuce; that said order required plaintiffs and other producers of lettuce to pay assessments for each carton of lettuce shipped to pay administrative, legal fees and other ex-

penses of the Board of Control, with which to administer such marketing order; and that plaintiffs are informed and believe that further and additional orders will be made and that such orders have been and will be issued at the suggestion of the defendant Board of Control. Plaintiffs allege that they are informed and believe that the defendant Swisher is acting under and by virtue of the powers and authority delegated to him by Chapter 7, Article 3, C.R.S. 1953, as amended, which act, if valid, authorizes the defendant Swisher to issue, administer and enforce the provisions of marketing orders regulating the handling of agricultural commodities in Colorado; that the defendant Board of Control is acting in an administrative capacity by virtue of Sections 3-7 (1), (2) and (3), if said sections are valid, and by virtue of said marketing order. It is further alleged that the plaintiffs are informed and believe that the Board of Control and defendant Swisher are in effect acting in concert to put into effect and enforce lettuce marketing orders.

"Plaintiffs further allege that at the time of the commencement of the action they had lettuce of first grade quality in their fields ready to cut, pack, sell and market and had purchasers willing, ready and able to purchase said lettuce; that they have expended large sums of money in the growing and producing of said lettuce and getting the same ready for market, and that the defendants are attempting to enforce the marketing order and orders subsequently adopted thereunder, and are attempting to force plaintiffs to disc up and otherwise destroy a percentage of their lettuce crop as well as dictate to them on what days and hours they can cut, harvest and ship the remainder of their lettuce, and allege that the statute under which the defendants purport to act is unconstitutional, null and void; and further allege that if they are required to abide by the orders issued by defendants, plaintiffs will suffer immediate and irreparable injury, and that plaintiffs have

no plain, speedy or adequate remedy at law. It is then alleged that the marketing act is unconstitutional for numerous reasons, which, briefly stated are that the act attempts to delegate legislative power to an individual, that is, the defendant Swisher; that the act constitutes an unlawful attempt to delegate legislative power to administrative agencies and without prescribing appropriate, adequate or any standards that are to govern the defendants in the exercise of the power attempted to be conferred; that the act confers upon defendant Swisher absolute, autocratic and arbitrary powers to impose requirements, conditions, duties and burdens upon persons in the lettuce industry wholly without regard to any compliance with any legislative standard and without regard for public interest, health, peace, safety and general welfare; that the authority delegated to defendant Swisher is not a reasonable exercise of the police powers and discloses no reasonable relationship to the public health, safety, welfare or morals; that said act attempts to vest in the defendant power to take property of the plaintiffs and other persons in the agricultural industry without due process of law and without just compensation; that the act empowers the defendants, and especially the defendant Swisher, to preclude plaintiffs and others engaged in the production of agricultural products from engaging to the best of their abilities in a useful, necessary and lawful business pursuit, all without corresponding benefit or any benefit to the public; that the statutory provisions and authority delegated to defendant Swisher are indefinite, ambiguous and incapable of achieving any lawful purpose; and that Section 7-3-16, C.R.S. 1953, delegated to the defendant Swisher, acting through his Board of Control, the power to legislate criminal and penal statutes.

"Finally, the plaintiffs allege the threat of a multiplicity of suits and allege the pendency of two suits against them attempting to enforce the provisions of the

act and the marketing order in which injustice and penal relief is sought, and pray for the entry of declaratory judgment determining and declaring that the Marketing Act of 1939, as amended, is unconstitutional and void, being violative of both the United States and State Constitutions.

"For Answer to the Amended Complaint the defendants deny that the Marketing Act of 1939, as amended, is unconstitutional, null or void in the particulars alleged, or at all; allege that the statute is fully effective, that the plaintiffs will in fact benefit from compliance with said marketing orders, and otherwise admit each and every other allegation of the first claim. * * *"

The Findings of Fact and Conclusions of Law entered in this case are voluminous and indicate a very thorough study on the part of the court concerning the issues of law which are involved. The ultimate conclusion of the trial court was that "* * * as a matter of law the Marketing Act of 1939, as amended, is, in the particulars hereinabove stated, unconstitutional and void. * * *" The court entered an injunction enjoining and restraining the defendants from enforcing or attempting to enforce the Act.

We first address ourselves to consideration of the principal ground upon which the trial court reached the above stated conclusion. The Conclusions of Law which it entered points up the crucial question in the following way:

"* * * Whether adequate standards are contained in the act to govern the actions of the Commissioner is the chief bone of contention. The courts are far from agreement on what is an adequate standard, some taking a narrow view and some the opposite. The Court is of the opinion that the constitutionality of the marketing act must here stand or fall on the resolution of the question of whether the act contains adequate standards, if any, to control the action of the Commissioner of Agriculture. * * *"

■ From what has been said above, it is readily apparent that a narrow question has been submitted to this court for determination. The question as to whether any of the marketing orders are within the coverage of the statute was expressly reserved for future consideration by the trial court. In this connection it is pertinent to note that the trial court proceeded first to determine the constitutionality of the act of the legislature reserving all questions involving the propriety of orders issued thereunder until after constitutionality had been determined. We have on numerous occasions stated that the reverse order should have been followed. In *Lipset v. Davis, et al.,* 119 Colo. 335, 203 P.2d 730, we held that no inquiry should be made concerning the constitutionality of a statute if the controversy can be decided on other grounds. To like effect is *Flanders v. Pueblo,* 114 Colo. 1, 160 P.2d 980; *State of Colorado v. American Can Company,* 117 Colo. 312, 186 P.2d 779; and *Kelley v. South Jeffco Metropolitan Recreation and Park District,* 155 Colo. 469, 395 P.2d 210.

■ The Marketing Act was adopted under the police power of the state and the general assembly declared that the conditions to which reference was made "vitally concern the health, peace, safety, and general welfare of the people of this state." Admittedly, statutes regulating agriculture may be adopted as an exercise of the police power. *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. This court has approved the rule announced in *Nebbia v. New York, supra,* in the case of *Zeigler v. People,* 109 Colo. 252, 124 P.2d 593, from which we quote the following:

"The police power relates not merely to the public health and to public physical safety, but also to public financial safety. Laws may be passed within the police power to protect the public from financial loss. *Holsman v. Thomas,* 112 O. St. 397, 147 N. E. 750, 39 A.L.R. 760."

In *Oberst v. Mays,* 148 Colo. 285, 365 P.2d 902, this court upheld a statute regulating agriculture in the pub-

lic interest, and the heavy burdens imposed by the act in an effort to prevent soil erosion were upheld.

The Supreme Court of the United States in *Lincoln Federal Labor Union v. Northwestern I. & M. Co.,* 335 U.S. 525, made the following pertinent statement which seems to reflect the modern trend of decisions:

"* * * that states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law."

Regulations imposed by a state in the exercise of its police power, when reasonable and adapted to the scope and objects sought to be accomplished, are not rendered unconstitutional even though private property is thereby injured or destroyed without the payment of compensation. *Ackerman v. Port of Seattle,* 55 Wash.2d 400, 348 P.2d 664. The reason for this is that, "* * * if the legislative act is within the police power of the state, then the rights of the individual which may be affected thereby must give way to the superior rights of the public, and he cannot complain that his property is taken without due process of law or without compensation first paid to him. * * *" *Agricultural Prorate Commission v. Superior Court,* 5 Cal.2d 550, 55 P.2d 495.

The rule is aptly stated in 11 Am. Jur., Constitutional Law, Sec. 266, as follows:

"The fact that police laws and regulations prevent the enjoyment of certain individual rights in property without providing compensation therefor does not necessarily render them unconstitutional as violating the due process clause or as appropriating private property for public use without compensation. Such laws, when reasonable and adapted to the scope and objects covered by the police power, are not considered as appropriating private property for public use, but simply as regulating its use and enjoyment by the owner. If he suffers injury, it is either damnum absque injuria, or,

in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

The Marketing Act (C.R.S. 1963, 7-3-3), in subsection 3 thereof, contains a statement of the purposes of the statute, as follows:

"PURPOSES OF ARTICLE. (1) (a) The purposes of this article are:

"(b) To enable agriculture producers of this state, with the aid of the state, more effectively to correlate the marketing of their agricultural commodities with market demands therefor;

"(c) To establish orderly marketing of agricultural commodities;

"(d) To provide for uniform grading and proper preparation of agricultural commodities for market;

"(e) To provide methods and means for the development of new and larger markets for agricultural commodities produced in Colorado;

"(f) To eliminate or reduce the economic waste in the marketing of agricultural commodities;

"(g) To restore and maintain adequate purchasing power for the agricultural producers of this state."

The trial court found that the Marketing Act is unconstitutional and void because it amounts to an unconstitutional delegation of legislative power and lacks adequate standards. The determinations in these respects are necessarily interrelated, since one depends upon the other. Perhaps more accurately, only one question is presented.

■■ Regulation through administrative agencies is an accepted part of our legal system. The existence of such agencies and their powers arise from the increased functions of our various governments, the complexity of modern social, economic, and industrial systems, the inability of the legislatures or the courts to perform these functions directly, the necessity for constant supervision by experts and specialists in difficult and com-

plicated fields, and the need for flexibility in the application of regulatory measures to meet constantly changing conditions. Certainly, there can be no serious question as to the power of the legislature to delegate responsibility for the administration of the Agricultural Marketing Act to the Commissioner of Agriculture. The constitutional question raised is whether, in delegating such authority, the legislature completed its job of making the law by establishing a definite plan or framework for the law's operation. The legislature does not abdicate its function when it describes what job must be done, who must do it, and the scope of his authority. In our complex economy, that indeed is frequently the only way in which the legislative process can go forward. *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641.

■ As a general rule for determining constitutionality of delegation of authority by the legislature, this court has approved the statement contained in *Field v. Clark,* 143 U.S. 649, 693, 694, which reads:

"The true distinction . . . is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

See *Hazlet v. Gaunt,* 126 Colo. 385, 250 P.2d 188; *Prouty v. Heron,* 127 Colo. 168, 255 P.2d 755.

■ The application of this well established general rule to a particular statute or a particular factual situation requires a determination as to whether the legislature has provided sufficient standards for the guidance of the administrative agency in the exercise of power conferred upon it by the legislature. It is not necessary that the legislature supply a specific formula for the guidance of the administrative agency in a field where flexibility and adaption of the legislative policy to infinitely variable conditions constitutes the essence of the program. The modern tendency is to permit liberal

grants of discretion to administrative agencies in order to facilitate the administration of laws dealing with involved economic and governmental conditions. In other words, the necessities of modern legislation dealing with complex economic and social problems have led to judicial approval of broad standards for administrative action, especially in regulatory enactments under the police power. With respect to such types of legislation, detailed standards in precise and unvarying form would be unrealistic and more arbitrary than a general indefinite standard.

In *Hazlet v. Gaunt, supra,* we approved the statement found in 11 Am. Jur., page 957, section 240, as follows:

"As far as the actual terms of the standard laid down are concerned, there seems to be considerable leeway, because the courts have indicated that the policy of the lawmaking body and the standard to guide the administrative agency may be laid down in broad and general terms."

The following pertinent language is to be found in *Ginsberg v. Centennial Turf Club,* 126 Colo. 471, 251 P.2d 926:

"* * * At the outset we must bear in mind the cardinal rule of statutory construction, that if there is reasonable doubt concerning the validity of a statute, when tested by a provision of the Constitution, the doubt must be resolved in favor of the validity of the legislative act. *Watrous v. Chamber of Commerce,* 121 Colo. 521, 218 P.2d 498; 16 C.J.S., p. 264. If the statute may be reasonably subject to two different constructions, one of which would result in invalidity and the other in validity, it is the duty of our court to harmonize it with the Constitution by adopting that construction which does not invalidate the work of the legislative branch of government. * * *" To like effect is the opinion of this court in *Cooper Motors v. Board of County Commissioners,* 131 Colo. 78, 279 P.2d 685.

The trial court in considering the point under discussion made the following pertinent comment:

"The difficulty of determining the validity of the marketing act is that the decisions of the courts of other states are not in accord on the question. Some states have held delegations of power such as we have here to be unconstitutional, while other states hold them to be constitutional. A decision on the question, either way, can be supported by respectable precedent. * * * The courts are far from agreement on what is an adequate standard, some taking a narrow view and some the opposite. * * *"

We have read opinions from twenty-one states which have upheld marketing acts comparable to the one adopted in Colorado. In six states we have found decisions which have held such acts, in certain particulars, to be unconstitutional. The great weight of authority seems to uphold marketing acts which are framed in language similar to that found in the Colorado law. In *Rohrer v. Milk Control Board*, 322 Pa. 257, 186 Atl. 336, we find the following:

"A moments consideration must convince an open mind of the impracticability of the general assembly itself conducting the hearings and arriving at the conclusions necessary for fixing fair rates for producer, distributor, dealer, and consumer in widely scattered and wholly dissimilar sections of the state. It has set forth in plain and unmistakable language the basic purposes and primary standards which it has in mind in an attempt to remedy the mischievous conditions which are present in the milk industry, the continuance of which threatens the welfare and well being of the whole people; and, having done so, it may lawfully appoint the board its agent upon whom devolves the duty to carry out the legislative policy. It has not delegated its power to make law, but has delegated the power to determine facts and apply the intention of the legislature to conditions thus determined."

Whether any particular marketing order is reasonable and adapted to the scope and objects sought to be accomplished, must frequently be determined on factual considerations. Prompt hearing and determination of pertinent facts is essential to a proper disposition of issues of this kind. As stated in *People v. Albrecht,* 145 Colo. 202, 358 P.2d 4:

"Where the existence of a rational basis for legislation, the constitutionality of which is attacked, depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. * * *"

In the instant case no evidence was taken, and the conclusions of the legislature concerning the need for remedial action must be accepted at face value.

The Marketing Act of 1939 is not unconstitutional upon its face, and the trial court erred in entering the judgment voiding the Act.

The judgment is reversed.