Dr. Henry A. Foley Executive Director Department of Social Services 1575 Sherman Street Denver, Colorado 80203
Dear Dr. Foley:
This is in reply to your request for an Attorney General's opinion on the following:
QUESTIONS PRESENTED AND CONCLUSIONS
1. Whether the Colorado Department of Social Services has statutory authority to continue the program of assistance to the medically indigent by disbursing the funds appropriated therefor in S.B. 468?
 The Colorado Social Services Code, C.R.S. 1973, 26-1-101 et seq.
provides sufficient statutory authority for a program of assistance to the medically indigent. Consideration of the appropriation for the medically indigent program in conjunction with the authority which the legislature has delegated to the Colorado Department of Social Services to provide a broad spectrum of welfare benefits leads to the conclusion that establishment of such program is within the lawfully delegated authority of the agency.
2. Whether the delegation of authority by the General Assembly to the Colorado Department of Social Services to establish and administer welfare programs is accompanied by the minimum standards required by the Colorado Constitution?
 The provisions of the Colorado Social Services Code satisfy the minimum requirements imposed by the Colorado Constitution for a valid delegation of authority by the General Assembly to an administrative agency. The statute establishes certain standards and objectives which govern the activity of the Colorado Department of Social Services. These standards are amplified by the specific restrictions which the General Assembly has imposed upon the funds appropriated for the medically indigent program. Moreover, the appropriation by the General Assembly for the second year of operation of the assistance program for the medically indigent constituted a ratification and confirmation of the implementation of such program by the Colorado Department of Social Services.
ANALYSIS
In 1974, the General Assembly appropriated funds for a special purpose welfare program to provide care to indigent patients in hospitals and health care centers owned by municipalities, counties, and hospital districts, 1974 Colo. Sess. Laws, Ch. 22 at 157. Former Attorney General John Moore issued an opinion, No. 74-0033, August 15, 1974, concluding that sufficient statutory authority existed for the Colorado Department of Social Services to disburse such funds in accordance with the appropriation made by the General Assembly. In October, 1974, the Colorado Board of Social Services promulgated rules and regulations implementing the program of assistance for the medically indigent.
In 1975, the General Assembly enacted an appropriation bill, S.B. 468, which provides as follows:
ITEM SUB TOTAL GENERAL FUND
(E) Hospitals and Health Centers — Care of Indigent Patients as determined by the June 1, 1972 Inpatient and Outpatient Ability to Pay Scale at a rate not to exceed charges for similar medical care and indigency at Colorado General Hospital or actual charges, whichever is less, except that no reimbursement shall be made until proof of payment by the patient of a minimum charge of $1.00 for outpatient and $10.00 for inpatient care has been submitted. $10,000,000 $10,000,000
/ fn. omitted /.
Regarding question #1, the Colorado Constitution, Article V, Section 32, provides as follows:
 Appropriation bills. The general appropriation bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial departments of the state, state institutions, interest on the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.
The Colorado Supreme Court has held that Article V, Section 32 prohibits the legislature from utilizing the general appropriation bill for the two-fold purpose of creating laws, and also appropriating money to carry them into effect.People v. Spruance, 8 Colo. 307, 6 P. 831 (1885). In approving this rule in People v. O'Ryan, 71 Colo. 69, 204 P. 86 (1922), the court held that the General Assembly could not properly include funds for the salary of an investigator in the general appropriation bill without substantive legislation to establish the position.
The appropriation for the medically indigent program is not subject to the constitutional defect which existed in People v. O'Ryan, supra, because authorization for a program of assistance to the medically indigent is contained within the broad authority delegated by the General Assembly to the Colorado Department of Social Services to provide programs of public assistance and welfare. C.R.S. 1973, 26-1-102 provides:
 It is the purpose of this title to promote the public health and welfare of the people of the state of Colorado by providing through the state department of social services, and through the county departments in accordance with the state department rules and regulations, programs relating to public assistance and welfare, including but not limited to assistance payments and social services; medical assistance; child welfare services; child care; protective services for the mentally retarded; programs for the aging; rehabilitation; and veterans' affairs. Such programs are intended to assist individuals and families to attain or retain their capabilities for independence, self-care, and self-support insofar as possible. The state department is authorized and directed to cooperate with and utilize the available resources of the federal government and private individuals and organizations for these programs.(Emphasis added.)
The quoted language indicates that the General Assembly did not limit the establishment of welfare programs in Colorado to those specifically enumerated. The list of named programs is preceded by the phrase ". . . including but not limited to . . . ." It cannot be said that the use of the phrase ". . . including but not limited to . . ." by the General Assembly was indiscriminate and without significance because when it desired to place restrictions upon the authority of the Department of Social Services to engage in certain activities, it chose language which explicitly expressed that intent.See, e.g., C.R.S. 1973, 26-4-105. The medically indigent program comes squarely within the legislative mandate to establish programs which assist persons to attain or retain their capabilities for independence, self-care, and self-support.
An examination of C.R.S. 1973, 26-1-108 corroborates the conclusion that the General Assembly authorized the Department of Social Services to establish additional welfare programs. In section 26-1-108 the General Assembly vested broad discretion in the Department of Social Services to define and structure the welfare programs which it administers. C.R.S. 1973, 26-1-108(1)(b) authorizes the Colorado Board of Social Services to issue rules governing:
(1) Program scope and content;
 (II) Requirements, obligations and rights of clients, recipients, vendors, providers, and other persons affected by acts of the state department;
Finally, one should note that C.R.S. 1973, 26-1-111(2) specifically provides:
The state department shall:
. . . .
 (i) Administer such additional public assistance and welfare activities and functions as may be vested in it pursuant to law.
An appropriation bill constitutes law within the meaning of C.R.S. 1973,26-1-111(2)(i).See McManus v. Love, 179 Colo. 218, 499 P.2d 609 (1972);Johnson v. McDonald, 97 Colo. 324, 49 P.2d 1017 (1935); Colorado Constitution, Art. V, § 33. Thus, I conclude that Article V, Section 32 of the Colorado Constitution does not present an impediment to the Department of Social Services' expenditure of funds appropriated for the medically indigent in S.B. 468.
Regarding question #2, the statutory provisions discussed above delineate the authority which the General Assembly has delegated to the Department of Social Services to provide a broad range of welfare benefits to citizens of Colorado. These statutory provisions satisfy the minimum requirements imposed by the Colorado Constitution for a valid delegation of authority by the General Assembly to an administrative agency. InSwisher v. Brown, 157 Colo. 378, 402 P.2d 626 (1965), the Colorado Supreme Court stated the test for determining whether a legislative delegation of authority is proper as follows:
 The constitutional question raised is whether, in delegating such authority, the legislature completed its job of making the law by establishing a definite plan or framework for the law's operation. The legislature does not abdicate its function when it describes what job must be done, who must do it, and the scope of his authority. In our complex economy, that indeed is frequently the only way in which the legislative process can go forward.
The test enunciated in Swisher, supra, has been reiterated in subsequent cases.Lloyd A. Fry Roofing Co. v. Department of Health Air PollutionVariance Board, 179 Colo. 223, 499 P.2d 1176 (1972); People v. Giordano,173 Colo. 567, 481 P.2d 415 (1971); Asphalt Paving Co. v. Board of CountyCommissioners, 162 Colo. 254, 425 P.2d 289 (1967).
In Swisher, supra, the court further elaborated on the nature of the test to determine the constitutionality of a legislative delegation of power. It stated that the crux of the matter is whether the General Assembly has provided sufficient standards for the guidance of the administrative agency in the exercise of the authority conferred upon it. In this regard, the court remarked:
 It is not necessary that the legislature supply a specific formula for the guidance of the administrative agency in a field where flexibility and adaption of the legislative policy to infinitely variable conditions constitutes the essence of the program. The modern tendency is to permit liberal grants of discretion to administrative agencies in order to facilitate the administration of laws dealing with involved economic and governmental conditions. In other words, the necessities of modern legislation dealing with complex economic and social problems have led to judicial approval of broad standards for administrative action, especially in regulatory enactments under the police power.
Id. at 627.
The standards which guide the Colorado Department of Social Services in performance of its statutory obligation are found in the legislative declaration of goals and objectives of the Social Services Code, C.R.S. 1973, 26-1-102, quoted above. The statute clearly sets forth the legislative purposes which are to be accomplished under the Code. The Colorado Department of Social Services is charged with: (1) promoting the public health and welfare; (2) providing public assistance for needy persons to meet the costs of necessary maintenance; and (3) providing programs to assist persons to attain or retain their capabilities for independence, self-care and self-support. In Senior Citizens League, Inc.v. Dept. of Social Security, 38 Wn.2d 142, 228 P.2d 478 (1951), the court held that similar language in the Washington Statutes conferred a valid and constitutional delegation of authority upon the state department of social security. In addition to the general standards of the Social Services Code, the General Assembly has imposed specific restrictions upon the expenditure of the funds appropriated for the medically indigent program. It is not necessary for the purpose of this opinion to determine whether the designated purposes of the appropriation is S.B. 468, quoted above, are binding limitations.
Finally, one must consider the significance and inference to be drawn from the decision of the General Assembly to appropriate funds for the second year of operation of the medically indigent program. In Brook v.Dewar, 313 U.S. 354 (1941), the U.S. Supreme Court held that an act of Congress appropriating funds with full knowledge of the actions of the administrative agency confirmed the agency's construction of the statute and ratified its action thereunder.Accord, Snell v. Wyman,281 F. Supp. 853 (S.D. N.Y. 1968), aff'd per curiam, 393 U.S. 323
(1969); United States v. Kennedy, 278 F.2d 127 (9th Cir. 1960); cf. MusicCity, Inc. v. Estate of Duncan, 185 Colo. 245, 523 P.2d 983 (1974). In view of the fact that the General Assembly was aware that the Department of Social Services had promulgated rules and operated a program of assistance to the medically indigent in the prior fiscal year, its appropriation of funds for continuation and expansion of the program must be considered a ratification and confirmation of the action of the Colorado Department of Social Services.
Nothing in the decision of the Colorado Supreme Court in Burciaga v.Shea, 187 Colo. 78, 530 P.2d 508 (1974) compels a conclusion contrary to that reached herein. First, the court did not address the question of the effect of C.R.S. 1973, 26-1-102. Thus, the case cannot be considered dispositive on that issue. Secondly, in Burciaga, the court had under consideration legislative action which purported to carve out a specific and narrow program of public assistance from an existing statutory framework which provided for a much broader program, without a modification to the substantive statutes. The court characterized the action of the legislature as an attempt to repeal the existing statute and substitute a new program without compliance with the requirements of the Colorado Constitution. In contrast, this case involves no attempted repeal of a statute. Establishment of the medically indigent program provides additional welfare benefits within the authority provided by the Colorado Social Services Code. Since persons eligible for assistance under the medically indigent program are not eligible for benefits under the Medical Assistance Program, C.R.S. 1973, 26-4-101 et seq., the medically indigent program does not infringe or narrow the benefits available under that program, but rather supplements the welfare benefits available to citizens of Colorado without affecting the nature of existing programs. Finally, the court in Burciaga, supra, did not have evidence of the General Assembly's unequivocal ratification and confirmation of the conduct of the agency in the operation of the program of assistance.
SUMMARY
In conclusion, it is my opinion that the broad grant of authority in the Social Services Code and the ratification by the General Assembly of the Department of Social Services' implementation of the 1974 appropriation for the medically indigent program provide sufficient legal basis for further implementation of the program in accordance with S.B. 468.

 Very truly yours,
 J.D. MacFARLANE
 Attorney General
STATE AGENCIES
INDIGENTS
MEDICAID AND MEDICARE

C.R.S. 1973, 26-1-101
Colo. Const. art. V, § 32
SOCIAL SERVICES, DEPT. OF
Medically Indigent

(1) The Department of Social Services has authority to provide a program of assistance to the medically indigent.(2) The delegation of authority by the legislature to the Department of Social Services is constitutionally sufficient.