Earl F. DODGE, John Lyons, Mary Rita Urbish, Dorothy J. Byrne, Doris E. Danahey, Paul Enockson, Norma J. Kelly, John A. Soelberg, Steven J. Wagner, Ronald D. Slater, Mary S. Meyers, Michael B. Sellers and Don MacManus, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

The DEPARTMENT OF SOCIAL SERVICES OF the STATE OF COLORADO, the State Board of Social Services of the State of Colorado and Armando Atencio, Executive Director of the Department of Social Services of the State of Colorado, Defendants-Appellees.

No. 81CA0615.

Colorado Court of Appeals, Div. III.

July 1, 1982.

Rehearing Denied Aug. 19, 1982.

Certiorari Denied Jan. 10, 1983.

Albert T. Frantz, Lakewood, Charles J. Onofrio, Denver, for plaintiffs-appellants.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Maurice G. Knaizer, Kenneth S. Lieb, Asst. Attys. Gen., Denver, for defendants-appellees.

KIRSHBAUM, Judge.

Plaintiff taxpayers, on behalf of themselves and other similarly situated taxpayers, appeal the trial court's judgment denying their motion for summary judgment and granting a summary judgment motion filed by defendants, the Colorado Department of Social Services (the Department), its director, and the Colorado Board of Social Services (the Board). Plaintiffs contend on appeal, as they did at trial, that the Department's expenditure of state funds to pay the costs of medical services rendered to certain indigent persons pursuant to the provisions of the Colorado Medical Assistance Act, § 26-4-101 et seq., C.R.S.1973, is unauthorized insofar as such medical services include the performance of abortions. See generally Dodge v. Department of Social Services, 198 Colo. 379, 600 P.2d 70 (1979). Plaintiffs do not question the constitutionality of any statute or regulation in this case, and defendants agree that their authority is created by statute and has no independent constitutional basis.

The following facts are undisputed. In 1965, the United States Congress adopted Title XIX of the Social Security Act, thereby establishing a broad program of federal financial assistance for the benefit of indigent persons otherwise unable to obtain necessary medical services. 42 U.S.C. § 1396 et seq. (1976 & Supp. IV 1980). This program, termed "Medicaid," authorizes appropriation of federal funds for payment to states establishing programs to reimburse indigent persons for the cost of specified medical care. The Colorado General Assembly established such a program, and the Department reimburses the costs of some 14,000 different medical procedures pursu-

ant to its provisions. Since January 1, 1969, the Department has reimbursed the costs of medical abortion procedures obtained by the beneficiaries of this program. The payments have been made from funds appropriated by the General Assembly pursuant to the Colorado Medical Assistance Act, § 26–4–101 et seq., C.R.S.1973, as amended, and its predecessors.

Subsequent to the United States Supreme Court decision of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), federal funds paid to Colorado under the federal medicaid program were made available to assist the funding of medical abortion services for indigent women under Colorado's medical assistance program. Commencing fiscal year 1977, Congress began to prohibit annually the use of federal medicaid funds to reimburse the costs of such services except in a very few narrowly-defined circumstances.[1]

On September 2, 1977, the Board adopted an emergency rule providing that all medical abortion services would be benefits under Colorado's medical assistance program. This rule became permanent on November 4, 1977, and was forwarded to the legislative drafting office, pursuant to § 24–4–103(8)(d), C.R.S.1973 (1981 Cum.Supp.), in the form prescribed by the General Assembly. Plaintiffs do not contend that the Department at any time failed to comply with the rule-making provisions of the State Administrative Procedure Act. *See* § 24–4–103, C.R.S.1973. Since 1977, reimbursements under Colorado's medical assistance program for costs of medical abortion services performed because of danger to the life of the mother have been made from both federal and state funds. Reimbursements for costs of all other medical abortion services have been paid from state funds only.

Every state electing to participate in the Medicaid program must satisfy certain minimum federal requirements. One such mandatory condition requires every participating state to provide medical assistance coverage for the "categorically needy." *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). This term is defined as follows in 42 C.F.R. § 435.4 (1981):

"'Categorically needy' means aged, blind or disabled individuals or families and children (1) who are otherwise eligible for Medicaid and who meet the financial eligibility requirements for AFDC, SSI, or an optional State supplement or are considered under section 1619(b) of the Act to be SSI recipients; or (2) Whose categorical eligibility is protected by statute (e.g., persons receiving cost of living increases under § 435.135)."

Participating states are also required to provide certain particular categories of services or benefits, including inpatient hospital services, outpatient hospital services, other laboratory and X-ray services, skilled nursing facility services, specific family planning services, and physicians' services. *Harris v. McRae, supra.* However, Title XIX does not prescribe all of the services or procedures which a participating state may offer within each of these required categories of medical care. *Moe v. Secretary of Administration and Finance,* 382 Mass. 629, 417 N.E.2d 387 (1981). Thus, each participating state retains great discretion to determine what specific medical services and procedures will be included in its particular state medical assistance plan. *See McKee v. Likins,* 261 N.W.2d 566 (Minn.1977). Although the federal program does not require states to reimburse the costs of medical abortion services for which federal funds are unavailable, participating states are not prohibited by any federal law from

---

1. In September 1976, Congress amended the Labor-HEW Appropriations Act for fiscal year 1977 by adopting a rider, commonly referred to as the "Hyde" amendment in recognition of its prime sponsor, which limited federal reimbursement of abortion services to cases in which "the life of the mother would be endan-

gered if the fetus were carried to term." Pub.L. No. 94–439, § 209, 90 Stat. 1434 (1976). Congress has imposed similar restrictions on the use of federal medicaid funds in each subsequent year either by amendment to relevant appropriations bills or by joint resolution.

establishing programs which use state funds to reimburse the expenses of those and other services, which would not be eligible for federal Medicaid funds. *Harris v. McRae, supra.*

## I.

■ Plaintiffs first argue that the relevant statutes governing the activities of the department do not permit the adoption of rules and regulations authorizing expenditures of state funds for medical abortion services. We disagree.

■ An administrative agency must comply strictly with its enabling statutes, and such agency has no authority to set aside or circumvent legislative mandates. *See Burciaga v. Shea,* 187 Colo. 78, 530 P.2d 508 (1974); *Flavell v. Department of Welfare,* 144 Colo. 203, 355 P.2d 941 (1960). Undisputedly, "the authority to regulate does not include the authority to legislate." *Rodgers v. Atencio,* 43 Colo.App. 268, 608 P.2d 813 (1979).

■ However, the General Assembly may permit any agency to promulgate rules and regulations to carry out the legislative purposes of the power granted to the agency. *See Elizondo v. State,* 194 Colo. 113, 570 P.2d 518 (1977). The requirement that the legislative branch must also establish sufficiently clear standards concerning the general scope of such rules ensures that fundamental policy decisions made by the elected legislative representatives of the people will not be altered by agency personnel. *See generally* Schwartz, *Administrative Law in the Next Century,* 39 *Ohio St.L.J.* 805 (1978). However, the General Assembly need not adopt a specific formula to guide agency rule-making if the agency can find general guidance in the purposes and overall scheme of an act. *Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621 (1965); *see Opinion of the Justices to the House of Representatives,* 368 Mass. 831, 333 N.E.2d 388 (1975).

The history of the Department and an analysis of its authority to establish rules and regulations must be considered against the background of these basic principles.

In 1936, the General Assembly adopted "The Welfare Organization Law of 1936." 1935 C.S.A., ch. 141, § 13 et seq. This statute created a Department of Public Welfare "charged with the administration or supervision of all the welfare activities of the state," whether specifically enumerated by statute or "vested in it by law." 1935 C.S.A., ch. 141, § 20. This Act also created a state Board of Public Welfare to "adopt all policies, rules and regulations for the government of" the Department of Public Welfare. 1935 C.S.A., ch. 141, § 16.

Pursuant to the Administrative Organization Act of 1968, the General Assembly created, *inter alia,* "a structure of state government which will be responsive to the needs of the people of this state and sufficiently flexible to meet changing conditions . . . ." Section 24–1–101, C.R.S.1973. This statute created the present Department and authorized it to exercise all the powers, duties, and functions previously exercised by the Department of Public Welfare and its Board. Section 24–1–120, C.R.S.1973.

In 1973, the Welfare Organization Law of 1936 was repealed and reenacted as the Colorado Social Services Code, § 26–1–101 et seq., C.R.S.1973. Colo.Sess. Laws 1973, ch. 340 at 1160. This code was adopted to promote public health and welfare by providing programs through the Department relating to public assistance and welfare, including medical assistance. Section 26–1–102(1), C.R.S.1973 (1981 Cum.Supp.). The General Assembly also reenacted the Colorado Medical Assistance Act in 1973, stating that the purpose of this Act was to "promote the public health and welfare of the people of Colorado by providing . . . medical and remedial care and services for individuals and families whose income and resources are insufficient to meet the costs of such necessary services . . . ." Section 26–4–102, C.R.S.1973. The Act authorizes reimbursement for numerous services, including inpatient hospital services, outpatient hospital services, and physicians' services. Section 26–4–105(1), C.R.S.1973. Section 26–4–104, C.R.S.1973, directs the Department to establish, by rules and regulations,

"a program of medical assistance to provide necessary medical care for the categorically needy." The Board is authorized expressly by §§ 26–1–108(1)(b)(I) and (III), C.R.S. 1973, to promulgate rules and regulations governing "[p]rogram scope and content" and "[s]uch other matters as the state board shall, at its discretion, hold to be matters of public policy."

Here, the trial court found that abortion is a medical procedure. This finding of fact is based upon sufficient evidence; hence, we may not disturb it on appeal. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970). When performed by physicians, this medical procedure necessarily involves physician services. It may also involve inpatient or outpatient hospital services, or both, as well as other statutorily defined categories of authorized medical services in some circumstances. We agree with the trial court's conclusion that this medical procedure falls well within the umbrella of "basic services" listed in § 26–4–105(1), C.R.S.1973, and therefore is available for cost reimbursement to the categorically needy under the Colorado Medical Assistance Act.

The General Assembly has not excepted this or any other particular medical procedure from the Act's coverage, and we are not at liberty to create such exception judicially. *See Tompkins v. DeLeon,* 197 Colo. 569, 595 P.2d 242 (1979); *Karoly v. Industrial Commission,* 65 Colo. 239, 176 P. 284 (1918). The categories and standards contained in §§ 26–4–104 and 26–4–105(1), C.R.S.1973, though necessarily broad, provide sufficient directions to guide the Department's rule-making functions. Hence, we conclude that the Board properly exercised its statutory authority to develop a program providing "necessary medical care" in 1977 when it adopted rules which included medical abortion procedures among the medical procedures available to the beneficiaries of the Colorado Medical Assistance Act. *See Lloyd A. Fry Roofing Co. v. State,* 179 Colo. 223, 499 P.2d 1176 (1972); *Swisher v. Brown, supra; see also City of Colorado Springs v. State,* Colo. App., 640 P.2d 870 (1982); *Kindley v. Governor of Maryland,* 289 Md. 620, 426 A.2d 908 (1981); *Opinion of the Justices to the House of Representatives, supra.*

## II.

Plaintiffs next contend that because the General Assembly has not passed a special appropriations bill to allow defendants to finance medical abortion procedures, defendants are illegally expending public funds in contravention of *Colo.Const.* Art. V, Sec. 33. We disagree.

The record reveals the following undisputed facts regarding the appropriations process for medical assistance programs administered by the Department. Annually, the Department prepares a budget request by estimating anticipated costs and caseloads for the forthcoming year. This request conforms to a line item format used by the General Assembly in its annual general appropriations bill. The line items include the fifteen basic categories which the General Assembly has defined as covered basic services in § 26–4–105, C.R.S.1973. It is undisputed, and the trial court found, that, since January 1969, all payments for medical abortion procedure reimbursements have been made by the Department under one or more of those statutorily defined categories. This finding is supported by the evidence, and will not be disturbed on appeal. *Linley v. Hanson, supra.*

The legislative Office of Planning and Budgeting also prepares annually a proposed budget for the Department's medical assistance programs. In addition, staff members of the Joint Budget Committee of the General Assembly analyze and evaluate the Department's budgetary requests. When these budget proposals and reports are completed, the Joint Budget Committee conducts hearings and drafts a recommended budget for the Department. This recommended budget then enters the legislative process, where it is debated and modified. The final version is incorporated into the general appropriations bill for the fiscal year involved.

The constitutional provision governing disbursement of public money provides as follows:

"No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law, and any amount disbursed shall be substantiated by vouchers signed and approved in the manner prescribed by law." *Colo.Const.* Art. V, Sec. 33.

■ The General Assembly may not include substantive legislation, and may not amend or repeal a law, in the general appropriations bill, commonly referred to as the "Long Bill." *Anderson v. Lamm,* 195 Colo. 437, 579 P.2d 620 (1978); *see Colo. Const.,* Art. V, Sec. 32. The sole purpose of the "Long Bill" is to meet charges already created against the public funds by affirmative acts of the General Assembly; thus, "the Long Bill may only be used to provide funds for programs that have been separately authorized and specifically detailed in other bills." *Anderson v. Lamm, supra; see Leckenby v. Post Printing & Publishing Co.,* 65 Colo. 443, 176 P. 490 (1918).

■ Section 26–1–121(1)(a), C.R.S.1973 (1981 Cum.Supp.), provides that the General Assembly "shall make adequate appropriations" for the payment of the costs of programs contained in Title 26, pursuant to the budget prepared by the Department. *See Rodgers v. Atencio, supra.* As we noted above, one of these programs is the medical assistance program administered by the Department. Contrary to plaintiffs' arguments, nothing in Title 26 requires the Department to prepare its budget according to specific types of medical procedures. To the contrary, as noted in part I, *infra,* the only categories of medical procedures contained in the Colorado Medical Assistance Act consist of very broad types of basic services. Moreover, a requirement that the Department should itemize the 14,000 different medical procedures which are reimbursed under the Act as part of its budgetary request would be at best over-burdensome and costly. Colorado's constitution requires neither the General Assembly nor the Department to prepare or adopt a budget describing each or any particular medical procedure eligible for reimbursement under the Colorado Medical Assistance Act.

## III.

■ Plaintiffs finally contend that even if the General Assembly has authorized defendants to fund medical abortion procedures, defendants are prohibited from paying for any such procedures that are not reimbursable under Title XIX of the federal Social Security Act. They argue that § 26–4–102, C.R.S.1973, expressly limits defendants' funding of medical abortion services to the medical abortion services not excluded by the language of the annual federal restrictions on the availability of Medicaid funds for such services. We disagree.

■ Whenever the meaning of a statutory provision is plain and free from ambiguity, the language is not subject to construction. *American Metal Climax, Inc. v. Claimant in re Death of Butler,* 188 Colo. 116, 532 P.2d 951 (1975). When a statute is susceptible to more than one interpretation, however, it must be construed in light of the apparent legislative intent and purpose. *Mooney v. Kuiper,* 194 Colo. 477, 573 P.2d 538 (1978). When a court construes a statute, it must (1) read and consider the statute as a whole so as to ascertain the legislative intent, *R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980); (2) construe the whole of the act in order to give a " 'consistent, harmonious, and sensible effect' " to all of its parts, *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); and (3) consider the ends the statute was designed to accomplish and the consequences that would follow from alternative constructions. *Mooney v. Kuiper, supra.* In no case is a court permitted to add an important qualification to a statute or act. *Estate of Bourquin,* 84 Colo. 275, 269 P. 903 (1928). Furthermore, in interpreting a statute establishing a program to be administered by an agency, courts must consider carefully the contemporaneous construction of the statute adopted by the administrative officials charged with its enforcement. *Travelers Indemnity Co. v. Barnes, supra.*

Section 26–4–102, C.R.S.1973, contains the following declaration of policy:

"It is the purpose of this article to promote the public health and welfare of the people of Colorado by providing, in cooperation with the federal government, medical and remedial care and services for individuals and families whose income and resources are insufficient to meet the costs of such necessary services and to assist such individuals and families to attain or retain their capabilities for independence and self-care, as contemplated by the provisions of Title XIX of the social security act. The state of Colorado and its various departments, agencies, and political subdivisions are authorized to promote and achieve these ends by any appropriate lawful means, through cooperation with and the utilization of available resources of the federal government and private individuals and organizations."

While this statute furnishes a limiting guide for administration of Colorado's medical assistance program, *see, e.g., Morgan v. White*, 168 Conn. 336, 362 A.2d 505 (1975), it does not limit the scope of that program to medical services and procedures for reimbursement under the federal Medicaid program.

Rather, it establishes a program for which the federal Medicaid funds provide minimum levels of medical care for the needy in Colorado. It expressly authorizes the Department to promote the ends of the Colorado Medical Assistance Act "through cooperation with and the utilization of available resources of the federal government and private individuals and organizations." Section 26–4–102, C.R.S.1973. At § 26–4–104, C.R.S.1973, the General Assembly states: "The state department [of Social Services] is hereby designated as the single state agency to administer such program in accordance with Title XIX *and* this article . . . ." (emphasis added) By these statutory provisions the General Assembly has established a state-wide program of medical assistance that is not limited to the provision of only those services categorized in the federal Medicaid legislation. The Department has consistently administered this state's medical assistance programs with this operative concept, *see Travelers Indemnity Co. v. Barnes, supra,* and with consistent legislative financial support. We conclude that the General Assembly has encouraged rather than prohibited the Department's policy of developing medical services programs supplementary to those programs minimally required by Title XIX of the Social Security Act.

As pointed out by plaintiffs, a few state legislative bodies have enacted legislation specifically prohibiting the use of state funds to finance various types of medical abortion procedures. *See, e.g.,* Idaho Code § 56–209c (1982 Cum.Supp.); N.J.Stat.Ann. § 30:4D–6.1 (West 1981). Our General Assembly has not done so, however, and we may not so legislate under the guise of statutory construction.

The judgment of the trial court is affirmed.

STERNBERG and TURSI, JJ., concur.