QUESTIONS PRESENTED AND CONCLUSIONS
ISSUE ONE: Can Local Government Mineral Impact funds be used to fund a state-wide public opinion poll on the issue of growth?
ANSWER: Not in this case. The Colorado Mineral Lands Leasing Act provides latitude to the Department of Local Affairs to determine which impacts are to be funded at the local level. The Act as amended, however, limits the Department's discretion in expending funds on a state-wide basis. A state agency or office may not expend Local Government Mineral Impact Funds unless the expenditure has received prior authorization by legislative appropriation. The purchase of a state-wide public opinion poll in this case was a state-wide expenditure. No appropriation for such expenditure was sought or approved.
ISSUE TWO: Did La Plata County have the authority to expend Local Government Mineral Impact Funds on a state-wide public opinion poll on the issue of growth?
ANSWER: Not in this case. The State-directed expenditures made under the contract at issue violated state fiscal law because the contract did not disclose to the state controller the consideration to be received by the taxpayers in exchange for the payment of public funds.[1]
 BACKGROUND
The Local Government Mineral Impact Fund.
The Local Government Mineral Impact Fund contains money paid to the State of Colorado by the federal government as compensation for federal mineral leasing impacts at the local level. According to statute, these monies are administered by the Department of Local Affairs for planning, construction, and maintenance of public facilities and for public service.
The Department of Local Affairs operates the Local Government Mineral Impact Fund in conjunction with the Local Government Severance Tax Fund, authorized by C.R.S. §39-29-110, and refers to the combined funds as the "Energy and Mineral Impact Assistance Program."[2] The Department of Local Affairs evaluates applications for both funds using the following criteria:
 — The relative extent of negative impact from energy and mineral development, including "bust" conditions;
 — The relationship of the proposed project to the negative impact;
 — The availability of alternative funding to address the situation;
— The amount of other funds leveraged;
— Local priority and community support; and,
 — The applicant's fiscal capacity and ability to pay.
DOLA 1994 Report at 1.[3] Characterizing expenditures for 1994, the Department of Local Affairs stated:
 [T]he Energy and Mineral Impact Assistance program has continued to focus on public facilities, water and sewerage infrastructure, public safety, and technical assistance needs of smaller communities.
Id.
The La Plata County Request
On October 18, 1994, La Plata County requested a $100,000 grant from the Local Government Mineral Impact Fund in order to fund a county-wide local planning effort. The proposal stated that La Plata County would use the grant in order to perform several analyses including: (1) the availability of ground and surface water; (2) the carrying capacity of existing roadways; (3) existing methods of sewage disposal; (4) wildfire potential; (5) the need for community services; and, (6) growth trends in the County. The effort was to be broken into four phases: data collection, forecasting, development, and community participation. On November 2, 1994 the Department of Local Affairs awarded La Plata County the $100,000 grant "to be used for a county-wide long range planning effort."
After the Department of Local Affairs awarded the $100,000 grant to La Plata County, state officials asked La Plata County to apply for an additional $75,000 grant from the Local Government Mineral Impact Fund to be used to fund a state-wide public opinion poll on the issue of growth. On December 8, 1994 La Plata County made such a request by letter. The request was approved the next day, December 9, 1994.
The total $175,000 grant is reported in the DOLA 1994 Report to the General Assembly in Table A as follows:
EIAF # Project $ Requested $ Awarded
. . .
03042 La Plata County Planning 175,000 175,000
Table C reported to the General Assembly that there were two "Statewide Programs" that received Energy and Mineral Impact Assistance program monies in 1994. The La Plata County Planning award was not one of the two "Statewide Programs" identified.
The contract under which Local Government Mineral Impact funds were granted to the County by the Department of Local Affairs made no mention of a state-wide public opinion poll. Based upon our review, it appears that the Department of Local Affairs/La Plata County contract does no more than define the scope of work described in the original October 18, 1994, application. The $75,000 in additional funds were merely added to the original $100,000 grant and appear in Exhibit A to the contract under the heading "Data Collection/Public Participation." Page 2 of Exhibit A describes hiring specific outside contractors. No mention is made of a public opinion polling consultant in this discussion. The only mention of any public opinion work appears at page 1 of Exhibit A and comes under the heading "Development of a county-wide
comprehensive growth management plan." (Emphasis added.)
Virtually all aspects of the contract with the polling company were handled by the Department, not the County. Of particular significance: (1) the specifications for the contract were designed by the pollster (Talmey-Drake), the Department, other state agencies, and groups representing local governments state-wide, not the County; (2) Talmey-Drake was selected by the Department, not the County; (3) the Department, not the County, determined whether Talmey-Drake performed the work required of it; and (4) the County paid Talmey-Drake only after being authorized to do so by the Department of Local Affairs.[4]
The resulting poll interviewed 2,223 Coloradans throughout the state. Of those polled, only 173 lived in La Plata County,[5] and, accordingly, the County appears to have been, at most, an incidental beneficiary of Talmey-Drake's work.[6] None of the questions posed in the survey related to the issue of mineral development impacts or local development in La Plata County.[7]
 ANALYSIS OF ISSUE ONE
The Federal Mineral Lands Leasing Act
The Federal Mineral Lands Leasing Act is the federal law which effectively spawned Colorado's Mineral Leasing Impact Fund statute. That federal statute provides:
 All money received from sales, bonuses, royalties . . . and rentals of the public lands . . . shall be paid into the Treasury of the United States; 50 per centum thereof shall be paid by the Secretary of the Treasury to the State . . . to be used by such state and its subdivisions, as the legislature of the State may direct giving priority to those subdivisions of the State socially or economically impacted by development of minerals leased under this chapter, for (i) planning, (ii) construction and maintenance of public facilities, and (iii) provision of public service.
30 U.S.C. § 191 (emphasis added).
The Federal Legislative History
The federal legislative history pertaining to the Federal Mineral Lands Leasing Act explains:
 Section 35 of the Act of February 25, 1920 as amended, is further amended by . . . inserting . . . "That all moneys paid to any state from sales, bonuses, royalties, and rentals of oil shale in public lands may be used by such State and its subdivisions for planning, construction, and maintenance of public facilities, and provision of public services, as the legislature of the State may direct, giving priority to those subdivisions of the State socially or economically impacted by the development of the resource."
1976 U.S. Code Cong. Admin. News, 90 Stat. 1323.
The Colorado Mineral Lands Leasing Act
The Colorado Mineral Lands Leasing Act, C.R.S. §34-63-102, was originally enacted in 1953. The Act contains the equation used to distribute money paid to the state by the federal government pursuant to 30 U.S.C. § 191.
In 1977, the Colorado Legislature added a provision to the Colorado Mineral Lands Leasing Act in order to create the Local Government Mineral Impact Fund. C.R.S. § 34-63-102(5)(a). According to this provision, the executive director of the Department of Local Affairs distributes moneys from the fund in accordance with the purposes and priorities described in C.R.S. § 34-63-102 (1). Subsection (1) provides that the Local Government Mineral Leasing Fund is for use by:
 state agencies, public schools, and political subdivisions of the state . . . for planning, construction, and maintenance of public facilities and for public service.
The legislative history accompanying the enactment of subsection (5)(a) in 1977 indicates three things: (1) the focus of the Local Government Mineral Impact Fund is directed to local impacts; (2) the Department of Local Affairs was to be given discretion in defining which local impacts would be funded; and (3) concerns were raised about the parameters of the Department of Local Affairs' authority, but the parameters of this authority remained undefined.
Subsection 5(a) was discussed by the House Committee on State Affairs on May 18, 1977. Felix Sparks, Director of the Water Conservation Board, offered an explanation of the state legislation necessary to comply with federal law:
 Colorado law adopted under the old act is not consistent with federal law so some change was required in the Mineral Leasing Act of Colorado which distributes the funds. This matter was taken up by the interim committee last summer and fall and a new bill was drafted . . . the way the bill came out of the Senate now . . . the additional 25% that the state got was split, 15% to the Department of Local Affairs to be used by the Department of Local Affairs to assist energy impacted communities and 10% was set aside to the Colorado Water Conservation Board . . . . The significant thing about that provision is that it is a continuing appropriation to the Department of Local Affairs and does not require further appropriation by the general assembly . . . .
(Emphasis added.)
What appears to be the best discussion in the legislative history of the intent of subsection 5(a) and the scope of the Department of Local Affairs' authority in administering the funds is the following colloquy between Representative Knox, the chairman of the interim committee that drafted subsection 5(a), and Mr. Sparks. Representative Knox stated:
 I was the chairman of the interim committee. The 15% disbursed by the executive director of the Department of Local Affairs . . . for the purposes and priorities described in subsection (1) . . . for planning, construction, and maintenance of public facilities and for public services is really very broad, and I'm a little bit concerned about that, and in the interim committee bill we were largely addressing the energy impact problem . . . and defining what energy impact projects were in a fairly precise kind of definition and I'm wondering, I'm a little frustrated, we're acting rapidly on something that has very broad financial implications . . . if we give a pretty broad delegation of authority, not necessarily limited to energy impact projects, not with any fairly precise definition what energy impacted projects are, simply referring back to planning, construction, and maintenance of public facilities . . . which really could be just about anything . . . .
Felix Sparks then responded:
 . . . the Department of Local Affairs . . . is where I feel the responsibility lies because they know more than any department in the State where the impact is going to be.
So I really feel that this is the area, the department of local government, where they know more about where these impacts are. . . .
(Emphasis added.)
The bill passed without addressing the precise parameters of the Department of Local Affairs' authority to allocate the funds.
The 1994 Amendment
In the 1994 legislative session, the discretion given to the Department of Local Affairs to allocate Local Government Mineral Impact Fund money was scaled back in a manner material to our analysis of the Treasurer's questions. A clarification regarding the Local Government Mineral Impact fund was added to the statute, C.R.S. § 34-63-102 (7):
 No state agency or office shall expend any moneys received from the local government mineral impact fund unless such expenditure is authorized by legislative appropriation separate from the provisions of this section . . . except . . . [in an] emergency . . . .
When subsection (7) was debated in the State Affairs Committee, Representative Blue stated:
 [This is] a provision that these local government mineral impact fund monies, if they are to be expended by an agency, do need to be authorized by legislative appropriation . . . and that is why we are here today.
Tim O'Brien, the State Auditor, further explained:
 . . . what we're suggesting is that the executive director of the Department of Local Affairs has made some grants to state agencies and those state agencies need to have the spending authority from the general assembly before they can spend those funds, and I think what this bill does is clarify that spending authority is necessary.
(Hearing, February 1, 1994).[8]
Analysis
Subsection (7) of the Colorado Mineral Lands Leasing Act was added to clarify that a state office or agency can only expend Local Government Mineral Impact funds by prior appropriation and that any expenditures must be consistent with the purposes of the statute. The 1994 amendment clearly states that neither the Department of Local Affairs nor any other state agency can expend local impact fund money without specific authorization.
The $75,000 of Local Government Mineral Impact funds used to fund the poll involved a state-agency expenditure because, as discussed above, the facts show that the poll was effectively procured by the Department. Although the grant was awarded to La Plata County, La Plata County's relationship with the public opinion poll involved little more than providing a conduit for funding. Accordingly, the Department of Local Affairs was required to receive authorization by legislative appropriation to fund a state-wide poll using Local Government Mineral Impact funds under § 34-63-102(7). This legislative mandate cannot be avoided by giving a local impact mineral fund grant to a county only to have the funds effectively channelled directly back into the hands of a state agency to conduct a state-wide poll. "An administrative agency must comply strictly with its enabling statutes, and such agency has no authority to set aside or circumvent legislative mandates." Dodge v. Dept. ofSocial Services, 657 P.2d 969, 973 (Colo.App. 1982).[9]
It is a much closer question whether funding a state-wide opinion poll on growth is consistent with the purposes of the Local Government Mineral Impact Fund. The answer to this question, however, is one which should have been provided by the General Assembly. Had the Department of Local Affairs followed appropriate procedures and obtained spending authority from the General Assembly, the General Assembly would have had the opportunity to determine, legislatively, whether such an expenditure was appropriate. Section 34-63-102(7) effectively gives the General Assembly the power to determine if state-agency expenditures are proper for the Local Government Mineral Impact Fund.
The General Assembly had no opportunity to exercise that power in this case. Not only did the Department of Local Affairs not seek such authority, the DOLA 1994 Report says nothing that would inform the General Assembly that Local Government Mineral Impact funds had been used to finance a state-wide public opinion poll on the issue of growth. As discussed above, the Report did not characterize the expenditure as one involving a "Statewide Program" as it did two other expenditures. Moreover, the DOLA 1994 Report referred to the award as "La Plata County Planning." But for the Treasurer's request, the General Assembly would have had no knowledge that Local Government Mineral Impact funds were used to fund a state-wide public opinion poll on the issue of growth.
ANALYSIS OF ISSUE TWO
County Planning Authority Generally
The counties' authority to engage in planning is set forth at C.R.S. § 30-28-101, et seq. C.R.S. § 30-28-104(2) delineates the powers of the county planning commission. The statute states:
 The county planning commission is . . . empowered to expend all grants . . . for the purposes for which the commission exists, and to contract with the state of Colorado . . . with respect thereto . . . .
The statutory purposes for which the commission exists are located at C.R.S. § 30-28-106 which explains that it is the duty of a county planning commission to make a master plan for the physical development of the territory within the boundaries of the region.
When adopting this master plan, surveys and studies are to be conducted pursuant to C.R.S. § 30-28-107. That section provides:
 In the preparation of a county or regional master plan, a county or regional planning commission shall make careful and comprehensive surveys and studies of the existing conditions and probable future growth of the territory within its jurisdictions. The county or regional master plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the county or region which, in accordance with present and future needs and resources, will best promote the health, safety, morals, order, convenience, prosperity or general welfare of the inhabitants, as well as efficiency and economy in the process of development.
(Emphasis added.)
The scope of work defined in La Plata County's original application, discussed above, clearly was within the County's authority. The County's local opinion polling is also within the County's authority and was properly defined by the original application. However, the scope of the expenditure here far exceeded polling La Plata County residents, and, indeed, most of the polling took place throughout the rest of the state on state-wide issues. There is, accordingly, a serious question whether La Plata County has the statutory authority to purchase a public opinion poll for the rest of the state.
We do not offer an opinion on that issue because we find that the specific contract at issue, under which the Department of Local Affairs provided Local Government Mineral Impact funds to La Plata County, did not mention that the funds would be used to pay for a state-wide public opinion poll. Under C.R.S. §24-30-202, the Controller, with the advice of the Attorney General, is responsible for evaluating contracts to insure their validity and to insure that the State receives adequate consideration under those contracts. Here, an essential element of consideration, the performance of a state-wide public opinion poll on the issue of growth, was omitted from the contract. The Controller and Attorney General were thus uninformed that the contract funds would be used for such a purpose when their representatives approved the contract. Accordingly, payments for the poll under the contract violated state fiscal law. C.R.S. §§ 24-30-202(1), 202(2), 202(3).
Accordingly, we conclude that La Plata County did not have the authority to expend Local Government Mineral Impact funds on the state-wide poll, in this case, because of the fiscal law violation.
SUMMARY
The General Assembly made it clear that the Local Government Mineral Impact Fund cannot be used to fund state agency projects without prior appropriation. This appropriation process cannot be avoided by providing a grant to a local government with the intent that the grant be used to fund a state-wide project. The specific expenditure at issue in this case violated state statutory and fiscal rules.
 GALE A. NORTON Attorney General
 RICHARD A. WESTFALL Special Deputy Solicitor General
GAN:RAW:wp
MUNICIPAL GOVERNMENT PUBLIC FUNDS
§ 39-29-110 et seq., C.R.S. § 34-63-102 et seq. § 30-28-101 et seq. § 24-30-202 et seq.
[1] The State of Colorado played the primary role in contracting with the pollster. Accordingly, we requested from the Department of Local Affairs and the Office of the Governor information related to contracting with the pollster, including files related to the poll. No information was provided beyond that provided by the Department of Local Affairs. We were also referred to the pollster. This opinion is based upon the information made available to us from the Department of Local Affairs, La Plata County and the pollster.
For purposes of this opinion, we will use "Department" to refer to both the Department of Local Affairs and the Office of the Governor.
[2] See Eighteenth Annual Report to the Colorado State Legislature, 1994, Summary and Status Report of the Mineral Lease and Severance Tax Funds (January, 1995) (hereinafter "DOLA 1994 Report"). The Department of Local Affairs is required to report to the General Assembly on the expenditures from both funds on an annual basis. C.R.S. §§ 34-63-102(5)(c),39-29-110(f)(3).
[3] The Department of Local Affairs formulated new guidelines in late 1995 on issuing Local Government Mineral Impact funds in addition to the criteria listed above. This opinion addresses the program as it existed at the time the La Plata County grant was made.
[4] The final payment was authorized by the Governor's Office by letter to La Plata County dated April 5, 1995, which stated as follows:
 I am writing to let you know that we have received all the materials as outlined in the scope of work in the Talmey-Drake Research Strategy, Inc., contract regarding the statewide growth opinion poll.
 We are satisfied with the materials produced.
(Emphasis added.) A copy of that letter is attached to this opinion.
[5] The contract between the Department of Local Affairs and the County mentions obtaining public opinion data through La Plata County area focus groups. That data collection process is now ongoing and is completely separate from the Talmey-Drake study.
[6] The Southwest region was "oversampled" according to Talmey-Drake by increasing the sample size in that region by 100 people. For purposes of the report, however, La Plata County was "down-weighted" to reflect La Plata County's population relative to the State's population. See Report Appendix at 1 (showing La Plata County at 1%); see also
Report "Methodology."
According to County officials, they received a computer disc containing raw data for the Southwest region. The County was unable to obtain data only for La Plata County from the disc. The County also received a written report for the Southwest Region.
According to Talmey-Drake, a computer run was performed breaking down the data for La-Plata County. Talmey-Drake provided us a copy of that breakdown. The County has no record, however, of receiving the written breakdown for La Plata County.
[7] By comparison, Greater Outdoors Colorado, which also provided some funding for the Talmey-Drake survey and which did participate in the survey's design, had one question included in the survey focused specifically on the use of lottery proceeds. See
Report Appendix at 14.
[8] Prior to the 1994 amendment, this office had taken a position on the ability of state agencies to expend Local Government Mineral Impact Fund monies. In a formal Attorney General Opinion issued November 12, 1987, Attorney General Duane Woodard concluded, among other things, that Local Government Mineral Impact funds "can only be used for the purposes set forth" in the statute. The Attorney General Opinion also stated that the Department of Local Affairs could not transfer mineral impact funds to the Office of the Governor absent a substantive change in the law, and that any grant of fund monies to a state agency would (a) have to be consistent with the purposes set forth in the statute and (b) have to be accompanied with a separate grant of legislative spending authority.
[9] The statutes dealing with cooperative purchasing arrangements between governmental entities, C.R.S. § 24-110-101 — 301, underscore that state agencies cannot circumvent state statutory requirements through the use of county purchasing powers. Id.
at § 24-110-207 ("No public procurement unit may enter into a cooperative purchasing agreement for the purpose of circumventing this code.").