Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 26, 2016

**2016 CO 62**

**No. 16SA75, <u>Department of Transportation, State of Colorado v. Amerco Real Estate Company</u>—Administrative Law and Procedure—Delegation of Authority—Condemnation Proceedings.**

Amerco and U-Haul petitioned for relief pursuant to C.A.R. 21 from an order of the district court, denying their request to dismiss the transportation department's Petition in Condemnation and instead granting the department's motion for immediate possession of the subject property, which is owned by Amerco and occupied by U-Haul.  The district court rejected U-Haul's assertion that the transportation commission's authorization for the department to condemn property for highway purposes, in the absence of any resolution by the commission approving the acquisition of the particular property to be taken, at a public meeting, amounted to an unlawful delegation of quasi-legislative power.

The supreme court issued its rule to show cause and now makes the rule absolute, remanding to the district court with orders to dismiss the department's Petition in Condemnation.  The supreme court holds that because the commission's enabling legislation contemplates that it alone must decide whether the public interest or convenience will be served by a proposed alteration of a state highway, and that

decision must be made in consideration of, among other things, the portions of land of each landowner to be taken for that purpose and an estimate of the damages and benefits accruing to each landowner whose land may be affected thereby, commission's general authorization, to the extent it purports to delegate to the department the choice of particular properties to be taken for such a highway project and the manner of their taking, constituted an unlawful delegation of the commission's statutorily imposed obligation.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

**2016 CO 62**

---

**Supreme Court Case No. 16SA75**
*Original Proceeding Pursuant to C.A.R. 21*
Jefferson County District Court Case No. 15CV31797
Honorable Christopher J. Munch, Judge

---

**In Re**

**Petitioner:**

Department of Transportation, State of Colorado,

v.

**Respondents:**

Amerco Real Estate Company, a Nevada corporation; Wells Fargo Foothill, Inc., a California corporation; Wells Fargo Bank, National Association, a United States bank; U-Haul Co. of Colorado; Merrill Lynch Commercial Finance Corporation, a Delaware corporation; Public Service Company of Colorado, a Colorado corporation; Margaret Chapman, Public Trustee of Jefferson County; and Tim Kaufman, Treasurer of Jefferson County.

---

**Rule Made Absolute**
*en banc*
September 26, 2016

---

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
Gregg E. Carson, Senior Assistant Attorney General
Lauren M. Curran, Assistant Attorney General
 *Denver, Colorado*

**Attorneys for Respondents Amerco Real Estate Company and U-Haul Co. of Colorado:**
Bryan Cave LLP
Stephen D. Gurr
Cynthia Lowery-Graber
 *Denver, Colorado*

No appearance on behalf of: Wells Fargo Foothill, Inc., a California Corporation; Wells Fargo Bank, National Association, a United States Bank; Merrill Lynch Commercial Finance Corporation, a Delaware Corporation; Public Service Company of Colorado, a Colorado Corporation; Margaret Chapman, Public Trustee of Jefferson County; and Tim Kaufman, Treasurer of Jefferson County.

**JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE GABRIEL** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE HOOD** join in the concurrence in the judgment.

¶1 Amerco and U-Haul petitioned for relief pursuant to C.A.R. 21 from an order of the district court denying their request to dismiss the transportation department's Petition in Condemnation and instead granting the department's motion for immediate possession of the subject property, which is owned by Amerco and occupied by U-Haul. The district court rejected U-Haul's assertion that the transportation commission's authorization for the department to condemn property for highway purposes, in the absence of any resolution by the commission approving the acquisition of the particular property to be taken, at a public meeting, amounted to an unlawful delegation of quasi-legislative power.

¶2 We issued our rule to show cause. Because the commission's enabling legislation contemplates that it alone must decide whether the public interest or convenience will be served by a proposed alteration of a state highway, and that decision must be made in consideration of, among other things, the portions of land of each landowner to be taken for that purpose and an estimate of the damages and benefits accruing to each landowner whose land may be affected thereby, the commission's general authorization, to the extent it purports to delegate to the department the choice of particular properties to be taken for such a highway project and the manner of their taking, constitutes an unlawful delegation of the commission's statutorily imposed obligation. The rule is therefore made absolute and the matter is remanded to the district court with orders to dismiss the department's Petition in Condemnation.

**I.**

¶3    In October 2015, the Colorado Department of Transportation filed a Petition in Condemnation to acquire land owned by Amerco Real Estate Co. and occupied by U-Haul Co., asserting that acquisition of the property in question was necessary for a highway expansion project at the US6 and Wadsworth Boulevard Interchange. The petition specified, "This is an eminent domain proceeding brought pursuant to the procedures set forth in Colorado Revised Statutes ('C.R.S.') §§ 38-1-101 et seq." The petition further alleged that "[p]ursuant to §§ 43-1-208, 43-1-209, and 43-1-210, C.R.S., CDOT is vested with the power of eminent domain," and that "[t]his statutory authority permits CDOT to acquire and condemn property, including the property subject to this action." Shortly after filing its petition, the department moved for immediate possession, and a hearing was set for February 2016.

¶4    U-Haul filed a brief in opposition to the motion for immediate possession, asking that the district court, in addition to denying the motion, also dismiss the department's entire petition for want of authority to condemn its land. U-Haul asserted that the department lacked the legal authority to condemn its particular property, on the grounds that the transportation commission, the entity statutorily authorized to acquire land by condemnation for such highway purposes, had failed to comply with the applicable statutory prerequisites, including resolving in the minutes of a public meeting, on the basis of a statutorily required report by the chief engineer, not only that the project in general, but also the acquisition of any properties required for its completion, would serve the public interest or convenience. U-Haul attached, and

4

directly disputed the adequacy of, various documents upon which the department based its claim of authority, most notably a 1994 resolution of the transportation commission directing the executive director of the department to handle, on behalf of the commission, the approval of land acquisitions, and a specific document entitled "Land Acquisition Approval," signed by the chief engineer of the department, which included for acquisition by the department the properties of U-Haul and some twenty other landowners, having a total estimated value of over $3 million. The "Land Acquisition Approval" itself specified that the transportation commission had, by resolution, previously directed "the Executive Director of the Department of Transportation, or his delegatee" to handle approval for land acquisitions relating to previously approved state highway projects, and that the executive director had, in turn, delegated such authority to the chief engineer. This "Land Acquisition Approval" by the chief engineer also included a reference to a 2009 resolution of the commission, approving the US6/Wadsworth project at issue.

¶5     After hearing the department's motion, the district court declined to dismiss the petition and instead granted the motion for immediate possession. Noting that neither side presented witnesses, but also that neither side disputed the admission of exhibits at the hearing or challenged the attached excerpts from commission minutes as failing to represent as accurate the record of the commission's actions, the court made written findings of fact and conclusions of law. The court largely reasoned that the commission's enabling statutes permitted it to conduct an eminent domain proceeding itself but also permitted it to acquire property by the procedure dictated by the eminent

5

domain provisions of title 38; that its 1994 resolution did not purport to delegate the commission's power to condemn property, but merely directed the chief engineer to exercise that power to acquire certain specific properties according to the procedures dictated by the eminent domain statutes; and that U-Haul's right to due process was not adversely affected by this choice of the commission.

¶6 Amerco and U-Haul petitioned for relief pursuant to C.A.R. 21 from the district court's order, and this court issued its rule to show cause.

## II.

¶7 Exercise of this court's original jurisdiction is entirely within its discretion. We have often deemed relief pursuant to C.A.R. 21 appropriate to correct an abuse of discretion or an excess of jurisdiction where no other adequate remedy exists. Because the order at issue is one for immediate possession by the transportation department for a highway expansion project, although U-Haul would nevertheless be entitled to compensation, in the absence of intervention by this court, its property would be taken and destroyed. In addition, and of particular importance to our decision in this instance, the dispute involves the lawfulness of a broad delegation of authority to condemn that has been relied on by the department for its regular practice for more than twenty years and will undoubtedly create uncertainty with regard to the department's future practice until ultimately resolved. Finally, the absence of any factual dispute and the purely legal nature of the statutory interpretation at issue renders the development of any additional record unnecessary.

## III.

¶8 A department of transportation is created at title 43, article 1, part 1, of the revised statutes, to be headed by an executive director, appointed by the governor with the consent of the senate, to serve at the pleasure of the governor. § 43-1-103, C.R.S. (2016). In the same part is created the office of the chief engineer. § 43-1-109, C.R.S. (2016). The chief engineer is to be appointed by the executive director, id., and is to function as the director of the engineering, design, and construction division of the department, § 43-1-110, C.R.S. (2016). On behalf of the department of transportation, the chief engineer has the authority to take and hold and to contract to take and hold title to real property, or any interest therein, in the name of the department of transportation, whether such real property or interest is used, or intended to be used, for right-of-way or maintenance purposes or for any other purpose authorized by law. § 43-1-111, C.R.S. (2016).

¶9 A separate corporate body, to be known as "the transportation commission of Colorado," is also created at title 43, article 1, part 1, to consist of eleven members, one each from eleven statutorily designated districts throughout the state. § 43-1-106, C.R.S. (2016). Although these members are similarly appointed by the governor with the consent of the senate, they do not serve at the pleasure of the governor, but rather serve statutorily prescribed, four-year terms. Id. The powers and duties of the commission, which are distinct from those of the department, are delineated in some detail by statute, see id., which includes a provision that "[t]he commission shall act only by resolution adopted at a duly called meeting of the commission, and no individual

7

member of the commission shall exercise individually any administrative authority with respect to the department," § 43-1-106(11) (emphasis added).

¶10    As we have often noted in the past, the right to condemn private property is a creature of statute and exists to the extent, and only to the extent, permitted by the General Assembly. See, e.g., Dep't of Transp. v. Gypsum Ranch Co., 244 P.3d 127, 129 (Colo. 2010). The power of eminent domain, including the procedures by which that power may be exercised and authorization to exercise it under various specific circumstances, is governed by title 38, articles 1 to 7, of the revised statutes. Title 38 expressly recognizes the authority of both the department and the commission to exercise the power of eminent domain, but only as specifically granted, under distinctly different circumstances, by other expressly enumerated statutory provisions, including those of title 43. See § 38-2-101, C.R.S. (2016).

¶11    Central to the issue before this court today, section 43-1-208, C.R.S. (2016),[1] provides for the commission's approval of any proposed changes to state highways.

---

[1] In its entirety, this section says:

> (1) The chief engineer, when he deems it desirable to establish, open, relocate, widen, add mass transit to, or otherwise alter a portion of a state highway or when so required by the commission, shall make a written report to the commission describing the portion of the highway to be established, opened, added to, or changed and the portions of land of each landowner to be taken for the purpose and shall accompany his report with a map showing the present and proposed boundaries of the portion of the highway to be established, opened, added to, or changed, together with an estimate of the damages and benefits accruing to each landowner whose land may be affected thereby.
>
> (2) If, upon receipt of such report, the commission decides that public interest or convenience will be served by the proposed change, it shall

8

Section 208(1) specifies that when the chief engineer "deems it desirable to establish, open, relocate, widen, add mass transit to, or otherwise alter a portion of a state highway," or when the commission requires him to do so, he is to "make a written report to the commission" containing specifically delineated information. Id. That report is to describe the portion of the highway to be established, opened, added to, or changed, as well as the portions of land of each landowner to be taken for that purpose; and it is to be accompanied by a map showing the present and proposed boundaries of the portion of the highway to be established, opened, added to, or changed, together

enter a resolution upon its minutes approving the same and authorizing the chief engineer to tender each landowner the amount of damages, as estimated by him and approved by the commission. In estimating the amount of damages to be tendered a landowner, due account shall be taken of any benefits which will accrue to such landowner by the proposed action. The amount of benefit shall not in any case exceed the amount of damages awarded.

(3) Any person owning land or having an interest in any land over which any proposed state highway extends who is of the opinion that the tender made to him by the transportation commission is inadequate, personally or by agent or attorney on or before ten days from the date of such tender, may file a written request addressed to the transportation commission for a jury to ascertain the compensation which he may be entitled to by reason of damages sustained by altering, widening, changing, or laying out such state highway. Thereupon the transportation commission shall proceed in the acquisition of such premises, under articles 1 to 7 of title 38, C.R.S. The transportation commission also has the power and is authorized to proceed in the acquisition of the lands of private persons for state highway purposes, according to said articles 1 to 7 of title 38, C.R.S., without tender or other proceedings under this part 2.

(4) Notwithstanding any other provision of this section, the commission may not acquire through condemnation any interest in oil, natural gas, or other mineral resources beneath land acquired as authorized by this section except to the extent required for subsurface support.

§ 43-1-208, C.R.S. (2016).

9

with an estimate of the damages and benefits accruing to each landowner whose land may be affected thereby. Id. If, upon receipt of this report, the commission decides that the public interest or convenience will be served by the proposed change, it is directed to enter a resolution in its minutes approving the project. § 43-1-208(2). Similarly, to acquire the portions of land to be taken for this purpose, the statute prescribes a procedure whereby the commission is to enter a resolution in its minutes authorizing the chief engineer to tender each landowner the amount of damages approved by the commission; and in the event the landowner declines that tender, in the manner and within the time permitted by statute, the commission is directed to acquire the property in question according to the condemnation provisions of title 38. § 43-1-208(2), (3). Alternatively, the transportation commission is authorized to proceed "in the acquisition of lands of private persons for state highway purposes" directly, according to the provisions of title 38, "without tender or other proceedings under this part 2." § 43-1-208(3).

¶12 Statutes have meaning according to the legislative intent expressed in the language of those statutes themselves. People v. Jones, 2015 CO 20, ¶ 10, 346 P.3d 44, 48; Pham v. State Farm, 2013 CO 17, ¶ 13, 296 P.3d 1038, 1043; Gypsum Ranch Co., 244 P.3d at 131; Frank M. Hall & Co. v. Newsom, 125 P.3d 444, 448 (Colo. 2005). Although interpretive aids are available to assist in determining which one of various reasonable interpretations of ambiguous statutory language actually embodies the legislative intent, People v. Owens, 228 P.3d 969, 972 (Colo. 2010), if the language of a statute is clear and unambiguous, and is not in conflict with other statutes, it must be applied as

10

written.  Holcomb v. Jan-Pro Cleaning Sys., 172 P.3d 888, 890 (Colo. 2007).  While there will often be room for debate about the breadth of surrounding text to be considered in assessing whether particular language can have more than one reasonable understanding, and is therefore considered ambiguous, there can be little question that the meaning of words or phrases cannot be separated from the broader context in which they are used and the function they serve, according to accepted rules of grammar and syntax, in the very sentence in which they appear.  See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

¶13    Although much has been made by the parties of the phrase, "without . . . other proceedings under this part 2," this arguably broad exemption is greatly circumscribed by the sentence in which it appears.  Read as a whole, that sentence merely provides an alternative method for the commission "to proceed in the acquisition of the lands of private persons for state highway purposes."  It in no way purports, and cannot be reasonably understood, to relieve the commission of its statutory obligation to assess, prior to acquiring property for that purpose, whether and under what circumstances the costs and benefits of a proposed highway change would be in the public interest or convenience.  The statute places squarely in the hands of this geographically representative and comparatively independent corporate body the responsibility for determining not only which of the enumerated kinds of highway projects should be approved, but also which properties need be taken for that purpose and the amount, or the method for calculating the amount, that may be paid for each of them.  With regard, in particular, to the acquisition of lands for the kinds of highway projects specified in

11

section 208, the commission is therefore assigned the choice whether to cause to be tendered specific amounts to the landowners in question or to submit to the evaluation of their properties by the statutory eminent domain mechanism; and if the commission decides on any particular tender that turns out to be insufficient, it is given the choice whether to subject the state fisc to the uncertainty of condemnation proceedings or (unless it is equitably estopped by its prior conduct from doing so, see Piz v. Hous. Auth. of the City & Cty. of Denver, 289 P.2d 905, 913 (Colo. 1955); see also Wheat Ridge Urban Renewal Auth. v. Cornerstone Grp. XXII, L.L.C., 176 P.3d 737, 742 (Colo. 2007)) to abandon its pursuit of that particular property altogether.

¶14     Unlike those circumstances in which the department is statutorily vested with the authority to determine whether to acquire property by condemnation, such as whether to acquire the remainder of a parcel, some part of which has already been determined to be taken, see § 43-1-210(1), C.R.S. (2016), or whether to acquire "excess right-of-way," see § 43-1-210(2), the decision to approve the acquisition of property for the kinds of highway alterations enumerated in section 208 in the first instance, and whether to limit the amount for which that property may be acquired, is a decision vested solely in the commission, see § 43-1-208(3).   Although the department is therefore clearly an entity authorized to exercise the power of eminent domain under the statutorily specified circumstances, and the chief engineer may clearly act on behalf of the department in this regard, the question posed by U-Haul's challenge to the district court's order at issue here is whether the commission may delegate the choice of which properties are to be taken, how much the state is willing to tender for a particular

12

parcel of property, and/or whether to acquire that property at whatever cost may be determined by the statutory condemnation process.

¶15 In this jurisdiction, we have long recognized the general rule that a municipal corporation, or quasi-municipal corporation, like the corporate body that is the transportation commission, may delegate to subordinate officers and boards powers and functions that are ministerial or administrative in nature, leaving little or nothing to the judgment or discretion of the subordinate; however, legislative or judicial powers involving judgment and discretion on the part of the municipal or quasi-municipal corporation may not be delegated unless such delegation has been expressly authorized by the legislature. Big Sandy Sch. Dist. No. 100-J, Elbert Cty. v. Carroll, 433 P.2d 325, 328 (Colo. 1967), overruled on other grounds by Normandy Estates Metro. Recreation Dist. v. Normandy Estates, Ltd., 553 P.2d 386 (Colo. 1976). There would appear to be little question that the initiation and conduct of condemnation proceedings could and almost certainly would have to be delegated to the legal staff or representatives of the commission or department, but the decision whether, and if so precisely how and for how much, to take particular property, for a particular proposed highway alteration project, clearly involves the kind of judgment and discretion that is non-delegable in the absence of express statutory authorization. Not only is the statute lacking in any express authorization to do so, but virtually the entire statutory scheme, creating and assigning specific powers and duties separately to the transportation commission, militates against a legislative intent to sanction such a delegation.

13

¶16    The 1994 resolution upon which the department relies directs it or its delegatee to handle, on the commission's behalf, "both the approval for land acquisition actions and the tendering of payment to landowners for damages in connection with previously approved highway projects." Whether this language is better understood to delegate to the department the choice to acquire land for an approved project either by first tendering an amount to the landowner or by proceeding directly by condemnation, or to simply delegate the choice of which properties to take by condemnation and thereafter tender payment to each such landowner in the amount determined by that process, it nevertheless amounts to an abdication of the commission's statutory duty to decide which parcels it will serve the public interest or convenience to take and whether the public interest or convenience will be served only if those parcels, or any of them, can be acquired for a specific, preapproved amount. Although the 1994 resolution recounts that the commission considers the land acquisition costs on a project-by-project basis in approving its fiscal year budget, and that the commission simply seeks to avoid duplication of effort, neither the 2009 resolution approving this highway project nor a record of any budgetary proceedings presented to the district court or this court suggests a parcel-by-parcel determination by the commission. Quite the contrary, the department expressly asserts, and the district court clearly found, that by proceeding directly by condemnation, as permitted by section 43-1-208(3), the commission is relieved of any obligation to make judgments concerning the public interest or convenience required at subsections 208(1) and (2).

14

¶17 Because we understand section 43-1-208 to plainly require the transportation commission to assess the public interest or convenience with regard to the particular properties to be taken for a proposed highway change and any limitations on the damages to be paid for those properties; and because we understand the last sentence of subsection 208(3), by its own terms, as merely providing an option for the commission to acquire the particular properties to be taken for any such project directly by condemnation, in lieu of tendering a preapproved amount of damages for them and submitting to the proceedings potentially attendant upon such a tender; we find the commission's 1994 resolution ineffective to delegate to the department the choice of the particular properties to be taken, whether by specific tender or petition in condemnation.

## IV.

¶18 Because the commission could not delegate its statutory obligation to determine the specific properties it would serve the public interest or convenience to take for the US6 and Wadsworth Boulevard Interchange expansion project and did not itself approve the taking of U-Haul's particular property by written resolution, in the manner required by statute, the rule is made absolute, and the matter is remanded to the district court with orders to dismiss the department's Petition in Condemnation.

**JUSTICE GABRIEL** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE HOOD** join in the concurrence in the judgment.

15

JUSTICE GABRIEL, concurring in the judgment.

¶19    I agree with the majority's ultimate conclusion that on the facts presented here, the Colorado Department of Transportation (the "Department") did not have the authority to pursue the condemnation at issue.  I do not, however, agree with the majority's construction of section 43-1-208, C.R.S. (2016), and therefore, my analysis differs from that of the majority.  Accordingly, I respectfully concur in the judgment only.

## I.  Analysis

¶20    Because the petition at issue was brought by the Department, I begin by addressing the Department's condemnation authority and conclude that the Department did not have either statutory or properly delegated authority to condemn the property at issue.  I then discuss why I disagree with the majority's construction of section 43-1-208.

## A.  The Department's Condemnation Authority

¶21    As the majority observes, the right to condemn private property in Colorado is a creature of statute and exists only to the extent permitted by our legislature.  Maj. op. ¶ 10.   Accordingly, "[w]e have often held that narrow construction is the rule in determining the scope of the condemnation power delegated pursuant to legislative enactment."  Coquina Oil Corp. v. Harry Kourlis Ranch, 643 P.2d 519, 522 (Colo. 1982); see also Platte River Power Auth. v. Nelson, 775 P.2d 82, 83 (Colo. App. 1989) ("The constitutional protection against the taking of private property by government without

1

due process imposes on the condemning governmental entity a requirement of strict compliance with and interpretation of the pertinent condemnation statutes.").

¶22    Although the majority begins the pertinent part of its analysis with a discussion of section 43-1-208, that section concerns the eminent domain authority of the Transportation Commission (the "Commission"), an entity created in section 43-1-106, C.R.S. (2016).  The petition at issue, however, was brought by the Department, a separate and distinct entity created in section 43-1-103, C.R.S. (2016).  See also § 43-1-102(1)–(2), C.R.S. (2016) (separately defining the Commission and the Department).  Accordingly, in my view, and notwithstanding the fact that the parties all seemed to presume that section 43-1-208 defines the Department's condemnation authority, the analysis must begin with a discussion of the Department's statutory authority to condemn private property.[1]

¶23    Pursuant to section 38-1-202(1)(b)(IV)(G), C.R.S. (2016), the Department may exercise the power of eminent domain in accordance with a number of enumerated statutes, including, as pertinent here, section 43-1-210(1)–(3), C.R.S. (2016), which provides for the Department's acquisition of certain rights of way, as well as of property to be taken for state highway purposes under certain enumerated conditions.  Notably, section 38-1-202(1)(b)(IV)(G) does not authorize the Department to exercise the power

---

[1] In fairness to the parties, I acknowledge that throughout our opinion in Department of Transportation v. Stapleton, 97 P.3d 938 (Colo. 2004), we spoke of the Department's authority under section 43-1-208(3).  That case, however, turned on a construction of the phrase "state highway purposes," and the distinction between the Department's condemnation authority and that of the Commission does not appear to have been at issue.  In these circumstances, I am unwilling to read into Stapleton a statutory construction that would effectively expand the Department's condemnation authority.

2

of eminent domain pursuant to section 43-1-208(3), the section about which the parties are arguing. To the contrary, section 38-1-202(1)(b)(IV)(I) makes clear that the condemnation authority under section 43-1-208(3) belongs to the Commission.

¶24    Accordingly, the first question to be answered is whether the General Assembly has given the Department the same authority that it gave the Commission under section 43-1-208(3). The parties have not cited any such statutory authority (to the contrary, as noted above, they appear to have assumed that section 43-1-208(3) applies), nor have I seen such authority.[2]

¶25    Because the Department does not appear to have the authority granted by section 43-1-208(3), which is the authority at issue, the question becomes whether the Commission, which unquestionably has such authority, could properly delegate that authority to the Department. For two reasons, I do not believe that it could.

¶26    First, any such delegation would effectively allow the Commission to expand the Department's statutory condemnation authority, thereby undermining the long-settled principles that (1) we construe strictly statutory authorizations of condemnation powers and (2) governmental entities exercising their condemnation powers must strictly

---

[2] As noted above, section 43-1-210(1) authorizes the Department to condemn certain property for state highway purposes under enumerated circumstances. It is not clear to me that section 43-1-210(1) applies here, and I am unwilling to presume that it does, given that the Department itself did not so argue before this court. Nor am I persuaded by the Department's arguments as to the inferences to be drawn from various statutes defining the Department's condemnation authority, given that we construe strictly statutory authorizations to condemn private property. Coquina Oil Corp., 643 P.2d at 522; Platte River Power Auth., 775 P.2d at 83.

comply with the statutes granting such powers.  See Coquina Oil Corp., 643 P.2d at 522; Platte River Power Auth., 775 P.2d at 83.

¶27   Second, any such delegation would arguably violate the nondelegation doctrine. The nondelegation doctrine is rooted in the constitutional separation of powers and prohibits the General Assembly from delegating legislative power to another department of government or person.  See People v. Holmes, 959 P.2d 406, 409 (Colo. 1998).   The doctrine is limited, however, by the fact that regulation through administrative agencies is an accepted part of our legal system.  Id.  Thus, the General Assembly may properly delegate its legislative power "when it describes what job must be done, who must do it, and the scope of his authority."  Swisher v. Brown, 402 P.2d 621, 626 (Colo. 1965).

¶28   Here, to the extent that the General Assembly can be said to have delegated to the Commission legislative authority to condemn private property pursuant to section 43-1-208(3), I perceive no basis for allowing the Commission to take it upon itself to delegate that authority to another entity.

¶29   I am not persuaded otherwise by the Department's citations to sections 43-1-106(8)(a), (d), and (f), C.R.S. (2016).  The cited provisions authorize the Commission (1) to formulate policies with respect to the management, construction, and maintenance of public highways; (2) to prescribe administrative practices to be followed by the Commission's executive director and the Department's chief engineer; and (3) to require the executive director and the chief engineer to furnish whatever assistance the Commission may request with respect to the operation of the Department.  Id.  I

4

perceive nothing in those sections that authorizes the Commission to delegate its condemnation authority (as opposed to administrative and ministerial functions) to the Department, and for the reasons set forth above, I believe that any such delegation would violate the principle of strict construction of statutory condemnation authority.

¶30 Because the Department does not appear to have either statutory or properly delegated authority to pursue the condemnation at issue, I agree with the majority's determination to make our rule to show cause absolute, and thus, I concur in the judgment.

## B. Section 43-1-208

¶31 Although the foregoing analysis would not require me to address the proper construction of section 43-1-208, I proceed to do so because both my disagreement with my colleagues and the issues raised in this case suggest a need for legislative action to clarify the General Assembly's intent regarding the respective condemnation authorities of the Commission and the Department.

¶32 We review de novo questions of law concerning the application and construction of statutes. Hickerson v. Vessels, 2014 CO 2, ¶ 10, 316 P.3d 620, 623. In interpreting statutes, we must give effect to the General Assembly's intent. Aetna Cas. & Sur. Co. v. McMichael, 906 P.2d 92, 97 (Colo. 1995). To do so, we interpret statutory terms in accordance with their plain and ordinary meanings. Id. In addition, "we examine the statutory language in the context of the statute as a whole and strive to give 'consistent, harmonious, and sensible effect to all parts.'" Reno v. Marks, 2015 CO 33, ¶ 20, 349 P.3d 248, 253 (quoting Denver Post Corp. v. Ritter, 255 P.3d 1083, 1089 (Colo. 2011)). We will

5

not add words to a statute, nor will we subtract words from it. Turbyne v. People, 151 P.3d 563, 567 (Colo. 2007). In the absence of ambiguity, we apply the statute's language as written. Id. If, however, a statute is ambiguous, then we may consider the statute's purpose or policy, as well as its legislative history, to discern the General Assembly's intent. McMichael, 906 P.2d at 97.

¶33 The majority quotes the entirety of section 43-1-208, see maj. op. ¶ 11 n.1, and I need not re-quote it here. The majority concludes that under section 43-1-208, the Commission must, in all circumstances, do two things. First, the Commission must receive from the Department's chief engineer a written report describing the portion of the highway to be established or altered, the portions of the land to be taken for such purposes, and an estimate of the damages and benefits accruing to each landowner whose land may be affected. See maj. op. ¶ 13. Second, the Commission must decide whether the public interest or convenience will be served by the proposed change and if so, enter a resolution on its minutes approving the change and authorizing the chief engineer to tender the estimated amount of damages. See id. The majority further appears to conclude that only after both of these things have been accomplished may the Commission choose whether to tender to the landowners the determined amount or, alternatively, to proceed under title 38. See id. For several reasons, I disagree with this construction.

¶34 First, I believe that the majority's construction is inconsistent with the plain and unambiguous language of section 43-1-208(3). That section provides, in pertinent part, "The transportation commission also has the power and is authorized to proceed in the

6

acquisition of the lands of private persons for state highway purposes, according to said articles 1 to 7 of title 38, C.R.S., without tender or other proceedings under this part 2."

¶35    In my view, this subsection means precisely what it says, namely, that in matters involving the acquisition of lands of private persons for state highway purposes, the Commission can proceed directly under title 38 (i.e., by filing a condemnation petition) without conducting any other proceedings under part 2 of title 38, which proceedings I take to include the processes set forth in subsections 43-1-208(1)–(2).

¶36    Unlike the majority, I think that such a construction makes perfect sense. In cases involving the property of private persons, the Commission has two choices. It can potentially avoid litigation by making findings that the public interest or convenience will be served by the acquisition and by then determining and tendering an amount of damages, which the landowner might accept. See § 43-1-208(1)–(3). Alternatively, the Commission can proceed directly to court, where (1) the Commission will be required to plead and prove, among other things, a public use and (2) the compensation to be paid to the owner will be assessed. See §§ 38-1-101(2), 38-1-102(1), 38-1-105 to -107, 38-1-115 C.R.S. (2016). Either way, authorized decision-making bodies—the Commission or a court—will determine the public interest and the proper compensation to be paid to the landowner.

¶37    The majority's interpretation of section 43-1-208, in contrast, would effectively construe section 43-1-208(3) to read, in pertinent part, "without tender or other proceedings under this part 2, except for the proceedings set forth in subsections (1) and

7

(2) of this section." As noted above, however, we may not add words to a statute. See Turbyne, 151 P.3d at 567.

¶38 Second, although the majority and the parties appear to be moved by the structure of section 43-1-208, the history of that statute persuades me that the structure sheds no light on the legislature's intent.

¶39 The statute traces back to the 1921 session laws. See ch. 136, sec. 20, 1921 Colo. Sess. Laws 370–71. Notably, in its initial iteration and until 1963, the language of what became section 43-1-208 was all contained in one section with no subsections. See ch. 33, sec. 1404, 1921 Compiled Laws 533; ch. 143, sec. 111, 1935 Colo. Stat. Ann.; § 120-3-8, C.R.S. (1953). In 1963, however, that provision was split into subsections, see § 120-3-8, C.R.S. (1963), and it appears that this was done by the revisor of statutes, as part of the 1963 decennial recodification. Because we have made clear that we will not attach any substantive significance to a statutory revisor's bifurcation of a statute into separate subsections, see People v. N. Ave. Furniture & Appliance, Inc., 645 P.2d 1291, 1298 (Colo. 1982), I assign no significance to the current structure of section 43-1-208, and particularly to the location of the language in section 43-1-208(3), which allows the Commission to proceed directly under title 38.

¶40 Accordingly, unlike the majority, I read section 43-1-208(3) to allow the Commission to choose to proceed directly under title 38 before undertaking the processes described in sections 43-1-208(1) and (2).

8

## II. Conclusion

¶41 For these reasons, I would make the rule to show cause absolute based on the Department's lack of statutory or properly delegated authority. In doing so, however, I cannot agree with the majority's construction of section 43-1-208. Accordingly, I respectfully concur in the judgment only.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE HOOD join in this concurrence in the judgment.