1
 2026 CO 29 In Re Northern Integrated Supply Project Water Activity Enterprise, a government-owned business organized pursuant to C.R.S. §§ 37-45.1-101 et seq, Petitioner v. VIMA Partners, LLC, a Colorado limited liability company; City of Thornton, a Colorado home rule municipality; DCP Midstream, LP, a Delaware limited partnership; WES DJ Gathering LLC f/k/a Kerr-McGee Gathering LLC, a Colorado limited liability company; and Brigitte C. Grimm, in her official capacity as Weld County Treasurer, Respondents: No. 25SA305Supreme Court of Colorado, En BancMay 4, 2026

 Original Proceeding Pursuant to C.A.R. 21 Weld County
 District Court Case No. 24CV30952 Honorable Kimberly Schutt,
 Judge.

 Attorneys for Petitioner: Trout Raley, Michael A. Kopp,
 William Davis Wert

 Attorneys for Respondent VIMA Partners, LLC: Womble Bond
 Dickinson (US) LLP

 Daniel
 C. Wennogle, Kendra N. Beckwith.

 Attorneys for Respondent City of Thornton: Thornton City
 Attorney's Office, Diana Fantano Hoffman, Senior
 Assistant City Attorney, Megan Christensen, Senior Assistant
 City Attorney.

 Attorneys for Amicus Curiae Colorado Water Congress: Jewell
 Jimmerson Natural Resources Law, LLC April D. Hendricks Peter
 D. Jaacks

 Attorneys for Amicus Curiae Southeastern Colorado Water
 Conservancy District: Jewell Jimmerson Natural Resources Law,
 LLC, April D. Hendricks, Peter D. Jaacks.

 Attorneys for Amici Curiae Ute Water Conservancy District and
 Ute Water Activity Enterprise: Balcomb &Green, P.C.
Christopher L. Geiger

 No
 appearance on behalf of: DCP Midstream, LP; WES DJ Gathering
 LLC f/k/ a Kerr-McGee Gathering LLC; and Brigitte C. Grimm,
 in her official capacity as Weld County Treasurer.

 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT,
 JUSTICE HOOD, JUSTICE SAMOUR, JUSTICE BERKENKOTTER, and
 JUSTICE BLANCO joined.

 ORDER DISCHARGED

 GABRIEL, JUSTICE.

 ¶1
 In this C.A.R. 21 proceeding brought by a private landowner,
 VIMA Partners, LLC, we issued an order to show cause to
 consider whether a water activity enterprise formed under
 sections 37-45.1-101 to -107, C.R.S. (2025), has the
 authority to bring an eminent domain proceeding against a
 private property owner.[1] We now conclude that pursuant to the
 express terms of section 37-45.1-103(4), C.R.S. (2025), and
section 37-45-118(1)(c), C.R.S. (2025), a water activity
 enterprise has the power to condemn private property in
 relation to water activities. We thus further conclude that,
 here, Northern Integrated Supply Project Water Activity
 Enterprise ("NISP Enterprise") has the authority to
 condemn easements on VIMA Partners' land to survey,
 locate, construct, operate, and maintain pipelines and
 related infrastructure for its water delivery project because
 that work relates to water activities as defined by statute.

 ¶2
 Accordingly, we discharge our order to show cause and remand
 this case to the district court for further proceedings
 consistent with this opinion.

 I.
Facts and Procedural History

 ¶3
 In October 2024, NISP Enterprise, a business wholly owned by
 the Northern Colorado Water Conservancy District
("Northern Water"), filed a petition in
 condemnation in the Weld County District Court seeking to
 acquire permanent and temporary construction easements on a
 parcel of land owned by VIMA Partners. According to NISP
 Enterprise, the easements are required for the surveying,
 locating, construction, operation, and maintenance of water
 delivery pipelines and related infrastructure as part of a
 regional water supply and distribution project called the
 Northern Integrated Supply Project ("NISP"). The
 NISP seeks to provide 40,000 acre-feet annually of new,
 reliable water supply to fifteen municipalities and water
 districts within Northern Water's boundaries.

 ¶4
 In its petition in condemnation, NISP Enterprise identified
 multiple legal sources for its authority to bring and
 maintain an eminent domain action, namely, article XVI,
 section 7 of the Colorado Constitution; section 37-86-102,
 C.R.S. (2025), and section 37-86-104(1), C.R.S. (2025),
 governing rights-of-way of persons owning water rights or
 conditional water rights; section 37-45.1-103(4) and section
 37-45-118(1)(c), governing water activity enterprises and
 water conservancy districts; and title 38, article 1 of the
 Colorado Revised Statutes, governing the right of eminent
 domain generally.

 ¶5
 Following the filing of NISP Enterprise's petition in
 condemnation, VIMA Partners filed a motion for judgment on
 the pleadings, arguing that none of the legal authorities
 cited by NISP Enterprise provided it with the power of
 eminent domain. The district court denied VIMA Partners'
 motion, ruling that NISP Enterprise had condemnation
 authority under article XVI, section 7 of the Colorado
 Constitution; sections 37-86-102 and 37-86-104(1); and
sections 37-45.1-103(4) and 37-45-118(1)(c).

 ¶6
 VIMA Partners then petitioned this court pursuant to C.A.R.
 21 for immediate relief, and we issued an order to show
 cause.

 II.
Analysis

 ¶7
We begin by addressing our jurisdiction under C.A.R. 21 and
 setting forth the applicable standard of review and
 principles of statutory construction. We then apply these
 legal principles to determine whether NISP Enterprise has the
 authority to condemn private property for the surveying,
 locating, construction, operation, and maintenance of
 pipelines and related infrastructure for the NISP.

 A.
Original Jurisdiction

 ¶8
 The decision to exercise our original jurisdiction under
 C.A.R. 21 rests within our sole discretion. Garcia v.
 Centura Health Corp., 2025 CO 15, ¶ 14, 566 P.3d
 999, 1005. An original proceeding under C.A.R. 21 is an
 extraordinary remedy that is limited in both its purpose and
 availability. Id. We have found it

 appropriate to exercise such original jurisdiction to remedy
 a district court's abuse of discretion or a ruling in
 excess of the court's jurisdiction when no other adequate
 appellate remedy exists. People v. Smith, 2023 CO
 40, ¶ 15, 531 P.3d 1051, 1054. We have also deemed it
 appropriate to exercise our C.A.R. 21 jurisdiction in
 condemnation proceedings when, as here, an appellate remedy
 would be inadequate because the condemnor would take
 immediate possession of the land and potentially damage that
 land while appellate review is pending. See Dep't of
 Transp. v. Amerco Real Est. Co., 2016 CO 62, ¶ 7,
 380 P.3d 117, 119.

 B.
Standard of Review and Principles of Statutory
 Construction

 ¶9
 In condemnation proceedings, as in other matters, we defer to
 the district court's findings of fact but review its
 legal conclusions de novo. Forest View Co. v. Town of
 Monument, 2020 CO 52, ¶ 13, 464 P.3d 774, 777.

 ¶10
We likewise review questions of statutory interpretation de
 novo. Byers Peak Props., LLC v. Byers Peak Land
 &Cattle, LLC, 2026 CO 7, ¶ 24, 583 P.3d 97,
 103. In construing statutes, we seek to determine and
 effectuate the legislature's intent. Id. To do
 so, we apply words and phrases in accordance with their plain
 and ordinary meanings, and we consider the entire statutory
 scheme to give consistent, harmonious, and sensible effect to
 all of its parts. Id. We also avoid constructions
 that would render any statutory words or phrases superfluous
 or that would lead to illogical or absurd results.
Id. And we respect the legislature's choice of

 language. Id. at ¶ 25, 583 P.3d at 103.
Accordingly, we will not add words to or subtract words from
 a statute. Id. If the statutory language is
 unambiguous, then we will apply it as written, and we need
 not resort to other rules of statutory construction.
Id.

 C.
Condemnation Authority

 ¶11
 VIMA Partners contends, among other things, that section
 37-45.1-103(4) of the water activity enterprise statutes and
 section 37-45-118(1)(c) of the Water Conservancy Act, when
 read together and narrowly construed, do not grant NISP
 Enterprise the power of eminent domain. We disagree.

 ¶12
 As noted above, Northern Water, the parent district of NISP
 Enterprise, is a water conservancy district. Prior to the
 passage of Colorado's Taxpayer's Bill of Rights
 ("TABOR"), Colo. Const. art. X, § 20, the
 General Assembly enacted the Water Conservancy Act of 1937,
 §§ 37-45-101 to -153, C.R.S. (2025), which allowed
 for the organization of water conservancy districts to
 provide for the conservation of the state's water
 resources and to ensure the greatest beneficial use of water
 within this state. To that end, the General Assembly provided
 water conservancy district boards a variety of powers.
See § 37-45-118.

 ¶13
 One of these powers is the power of eminent domain. Thus,
 section 37-45-118(1)(c) provides:

The board has power on behalf of said district . . . [t]o
 have and to exercise the power of eminent domain and dominant
 eminent domain

 and in the manner provided by law for the condemnation of
 private property for public use to take any property
 necessary to the exercise of the powers granted in this
 article, [subject to an exception not pertinent here].

 ¶14
 Accordingly, the General Assembly expressly granted water
 conservancy districts the power of eminent domain to take
 private property when necessary for the exercise of the
 districts' powers. Id. Indeed, VIMA Partners
 does not contest Northern Water's authority to condemn
 its lands.

 ¶15
 Following the passage of TABOR, taxing, revenue, and spending
 limitations were applied to state and local governmental
 entities, including water conservancy districts. See,
 e.g., Colo. Const. art. X, § 20(1), (4), (7)-(8).
To address these limitations and provide for the continued
 beneficial use of all waters originating in Colorado, the
 General Assembly enacted water activity enterprise statutes
 to allow for the establishment of water activity enterprises,
 within or by water conservancy districts, water conservation
 districts, and other state and local governments, to pursue
 or continue "water activities." §
 37-45.1-101(1), C.R.S. (2025); § 37-45.1-103(1). See
 generally Gregory J. Hobbs, Jr., Water Activity
 Enterprises, 22 Colo. Law. 2555 (Dec. 1993) (discussing
 the legislative creation of and purposes for water activity
 enterprises under TABOR's enterprise exception). Such
 enterprises are government-owned businesses within the
 meaning of TABOR but are excluded from certain limitations
 that TABOR otherwise places on state and local governmental
 entities. See Colo. Const. art. X, § 20(2)(b),
 (d)

 (defining "[district" as excluding enterprises and
 "[enterprise" as "a government-owned business
 authorized to issue its own revenue bonds and receiving [sic]
 under 10% of annual revenue in grants from all Colorado state
 and local governments combined").

 ¶16
 Each water activity enterprise is wholly owned by a single
 district, and the governing body of the water activity
 enterprise is either the governing body of the district that
 owns it or such governing body as may be prescribed by
 applicable laws; local charters, resolutions, or ordinances;
 or intergovernmental agreements. § 37-45.1-103(2)(a),
 (3). Moreover, the General Assembly expressly authorized the
 governing body of each water activity enterprise to exercise
 its parent district's legal authority relating to water
 activities. § 37-45.1-103(4). Thus, section
 37-45.1-103(4) provides, "The governing body of each
 water activity enterprise may exercise the district's
 legal authority relating to water activities, but no
 enterprise may levy a tax which is subject to section 20(4)
 of article X of the state constitution."

 ¶17
 Because NISP Enterprise is a water activity enterprise and
 its parent district is Northern Water, we conclude that, read
 together, the plain and unambiguous language of sections
 37-45.1-103(4) and 37-45-118(1)(c) allows NISP Enterprise to
 exercise Northern Water's legal authority, including the
 power of eminent domain, provided that this authority is
 exercised in relation to "water activities."

§ 37-45.1-103(4). The question thus becomes whether NISP
 Enterprise exercised its eminent domain authority here in
 relation to such "water activities."

 ¶18
Section 37-45.1-102(3), C.R.S. (2025), defines "[w]ater
 activity" to include, without limitation, "the
 diversion, storage, carriage, delivery, distribution,
 collection, treatment, use, reuse, augmentation, exchange, or
 discharge of water." The definition further provides
 that a "[w]ater activity" includes "the
 provision of wholesale or retail water or wastewater or storm
 water services and the acquisition of water or water
 rights." Id.

 ¶19
 In this case, NISP Enterprise initiated the condemnation
 proceedings at issue in connection with the construction and
 maintenance of pipelines and related infrastructure for the
 NISP, which, as noted above, is a water delivery and
 distribution project. Under section 37-45.1-102(3)'s
 plain language, such pipelines and infrastructure are
 directly related to "water activities" because the
 pipelines and infrastructure are indisputably related to the
 acquisition, carriage, delivery, and distribution of water.

 ¶20
 For these reasons, we conclude that under the express
 language of sections 37-45.1-103(4) and 37-45-118(1)(c), NISP
 Enterprise may exercise the power of eminent domain related
 to the construction and maintenance of these pipelines and
 their related infrastructure.

 ¶21
 Our reading of these statutory provisions is confirmed by
 section 38-1-202, C.R.S. (2025), in which the General
 Assembly provided a list of entities authorized to exercise
 the power of eminent domain under Colorado law. As pertinent
 here, section 38-1-202(1)(f)(XXX) provides:

The following governmental entities, types of governmental
 entities, and public corporations . . . may exercise the
 power of eminent domain: . . . A water activity enterprise,
 as defined in section 37-45.1-102(4), C.R.S., exercising the
 legal authority to exercise the power of eminent domain of
 the district that owns it in relation to a water activity, as
 defined in section 37-45.1-102(3), C.R.S., as authorized in
 section 37-45.1-103(4), C.R.S.

 ¶22
 Just as we read the plain language of sections 37-45.1-103(4)
and 37-45-118(1)(c) together to grant water activity
 enterprises the power of eminent domain in relation to water
 activities, so, too, does our General Assembly.

 ¶23
 Notwithstanding the plain language of the above-described
 statutes, VIMA Partners argues that, for a number of reasons,
 a water activity enterprise does not have condemnation
 authority. We address and reject each of these arguments in
 turn.

 ¶24
 First, VIMA Partners contends that because Colorado case law
 dictates that statutes granting condemnation authority must
 be narrowly construed, sections 37-45.1-103(4) and
37-45-118(1)(c) cannot be read to grant NISP Enterprise the
 power of eminent domain.

 ¶25
 As VIMA Partners asserts, we construe eminent domain statutes
 narrowly, and we resolve any ambiguities in favor of the
 condemnee landowner. Bly v. Story, 241 P.3d 529, 533
(Colo. 2010). Accordingly, the power of eminent domain cannot
 be implied from doubtful or vague language in a statute, but
 rather the authority to condemn must be provided expressly or
 by necessary implication. Mack v. Town of Craig, 191
 P. 101, 101 (Colo. 1920); accord Bd. of Cnty. Comm'rs
 of Arapahoe Cnty. v. Intermountain Rural Elec.
 Ass'n, 655 P.2d 831, 833-34 (Colo. 1982). Despite
 VIMA Partners' assertions to the contrary, for the
 reasons set forth above, the General Assembly did
 expressly authorize water activity enterprises like NISP
 Enterprise to exercise the power of eminent domain in
 relation to water activities.

 ¶26
The cases on which VIMA Partners relies to argue that a
 narrow construction precludes such a conclusion are
 distinguishable. In each of those cases, a party sought to
 find condemnation authority in vague or broad statutory
 language that did not specifically identify either the power
 of eminent domain or the class of persons or activities for
 which that power may be exercised. See, e.g.,
 Coquina Oil Corp. v. Harry Kourlis Ranch, 643 P.2d
 519, 521-22 (Colo. 1982) (concluding that a federal oil and
 gas lessee did not have the power to condemn under general
 constitutional and statutory provisions authorizing the
 taking of private property in certain circumstances because
 those provisions did not unambiguously grant to federal oil
 and gas lessees the right to condemn);

Town of Eaton v. Bouslog, 292 P.2d 343, 344 (Colo.
1956) (concluding that the power of eminent domain cannot be
 implied from the word "otherwise" in a statute
 granting incorporated towns the power to acquire lands for
 cemeteries "by purchase or otherwise"); Akin v.
 Four Corners Encampment, 179 P.3d 139, 144-46 (Colo.App.
2007) (concluding that the authority to condemn private
 property for a natural gas pipeline could not be implied from
 a grant of condemnation authority for "private ways of
 necessity" because that phrase had been construed
 narrowly to encompass only passageways or roadways that were
 indispensable to the practical use of a property). Here, in
 contrast, the statutory language identifies the power of
 eminent domain, § 37-45-118(1)(c), and the General
 Assembly granted water activity enterprises authority to use
 that power in relation to water activities, §
 37-45.1-103(4).

 ¶27
 Second, and related to its first point, VIMA Partners
 contends that our obligation to construe narrowly statutes
 granting the power of eminent domain precludes us from
 interpreting sections 37-45-118(1)(c) and 37-45.1-103(4) so
 broadly as to encompass a right to condemn in this case. As
 discussed above, however, these statutes, when read together,
 authorized NISP Enterprise to exercise condemnation authority
 relating to "water activities," which are defined
 to include activities such as those involved here. §
 37-45.1-102(3). Contrary to VIMA Partners' suggestion,
 our duty to construe condemnation statutes narrowly

 does not authorize us to ignore express statutory language
 that grants the power of eminent domain to an entity for what
 might be deemed a broad set of purposes. See Dep't of
 Transp. v. Stapleton, 97 P.3d 938, 943-45 (Colo. 2004)
(interpreting a statute that granted the Colorado Department
 of Transportation the power of eminent domain for "state
 highway purposes" to include condemnation authority not
 only for the acquisition of the land strictly necessary for a
 highway's construction, but also for purposes
 "integral to the construction, maintenance, and
 improvement of state highways," including a parking and
 transit facility).

 ¶28
 Third, VIMA Partners argues that because the definition of
 "water activity" does not include the phrase
 "eminent domain" or similar language referencing
 the taking of private property, section 37-45.1-103(4)'s
 grant of authority "relating to water activities"
 does not include the power of eminent domain. This argument,
 however, fails to consider the statutory scheme as a whole,
 as we must do. See Byers Peak Props., ¶ 24, 583
 P.3d at 103.

 ¶29
 As discussed at length above, water activity enterprises'
 condemnation power is rooted in the statutory language
 establishing that such entities "may exercise the
 district's legal authority," § 37-45.1-103(4),
 and water conservancy districts indisputably have the power
 of eminent domain, § 37-45-118(1)(c). Accordingly, these
 statutes establish water activity enterprises' power of
 eminent domain. The phrase "relating to water
 activities," in turn, describes the purposes

 for which water activity enterprises may exercise their
 condemnation authority. See § 37-45.1-103(4).
Thus, the definition of "water activity" is
 pertinent to determining the scope of a water activity
 enterprise's condemnation authority, not the existence of
 that authority.

 ¶30
 Finally, VIMA Partners contends that NISP Enterprise cannot
 exercise the power of eminent domain in relation to its
 pipeline and infrastructure work because the statutory
 definition of "water activity" does not
 specifically identify pipelines or infrastructure projects.
Again, VIMA Partners' interpretation ignores statutory
 language, which we may not do. See Byers Peak
 Props., ¶ 24, 583 P.3d at 103.

 ¶31
 Specifically, section 37-45.1-103(4) does not grant legal
 authority to water activity enterprises solely for defined
 water activities under section 37-45.1-102. To the contrary,
 section 37-45.1-103(4) grants legal authority for purposes
 "relating to water activities." (Emphasis
 added.) Thus, water activity enterprises may exercise legal
 authority for actions taken in connection with its water
 activities, even if the action itself is not expressly
 identified as a water activity under the statute. See
 Related, Black's Law Dictionary (12th ed. 2024)
(defining "related" as "[c]onnected in some
 way; having relationship to or with something else");
see also Woodrow v. Wildlife Comm'n, 206 P.3d
 835, 837 (Colo.App. 2009) (defining "related

 activity" to mean having a "connection, relation,
 or reference" or being "connected; associated"
 with the activities listed in the statute).

 ¶32
 Moreover, section 37-45.1-102(3) provides that the term
 '"[w]ater activity' includes but is not
 limited to" the illustrative list of activities
 provided in the definition. (Emphasis added.) We read the
 phrase "includes, but is not limited to" as an
 "expansion or enlargement" and a "broader
 interpretation" of the statutory definition. People
 v. Roggow, 2013 CO 70, ¶ 20, 318 P.3d 446, 451
(quoting Ruff v. Indus. Claim Appeals Off., 218 P.3d
 1109, 1113 (Colo.App. 2009), aff'd in part and
 rev'd in part sub nom., City of Manassa v. Ruff. 235
 P.3d 1051 (Colo. 2010)).

 ¶33
 Notwithstanding the foregoing, VIMA Partners attempts to
 bolster its reading of "water activity" as
 excluding pipeline and infrastructure projects by pointing to
 the existence of a separate definition in the statutory
 scheme, namely, section 37-45.1-102(5)'s definition of
 "[w]ater project or facility," which defines that
 term to include "a dam, storage reservoir, compensatory
 or replacement reservoir, canal, conduit, pipeline,
 tunnel, power plant, water or wastewater treatment facility,
 and any and all works, facilities, improvements and property
 necessary or convenient for the purpose of conducting a water
 activity." (Emphasis added.) As VIMA Partners sees it,
 because the statutory definition of "[w]ater project or
 facility" includes "pipeline" and other
 infrastructure projects, a pipeline must be something other
 than a "water activity." Again, however,

VIMA Partners does not read the statutory language as a
 whole, as we are required to do. See Byers Peak
 Props., ¶ 24, 583 P.3d at 103.

 ¶34
 Although the General Assembly included different statutory
 definitions to distinguish between general water activities
 and water projects and facilities, we do not read the former
 as mutually exclusive of the latter. Indeed, in section
 37-45.1-103(1), the General Assembly made clear that water
 activity enterprises may be established "for the purpose
 of pursuing or continuing water activities,
 including water acquisition or water project or
 facility activities." (Emphasis added.) The statutory
 scheme thus describes "water project or facility
 activities" as a subset of "water
 activities," not as a wholly separate category under the
 statutory language.

 ¶35
 In sum, we conclude that under sections 37-45.1-103(4) and
37-45-118(1)(c), NISP Enterprise has the authority to condemn
 easements on VIMA Partners' land to construct and
 maintain pipelines and related infrastructure for the NISP.
In light of this conclusion, we need not decide whether
 article XVI, section 7 of the Colorado Constitution or
 sections 37-86-102 and -104(1) independently provide NISP
 Enterprise with condemnation authority.

 III.
Conclusion

 ¶36
 For the foregoing reasons, we conclude that pursuant to the
 express terms of sections 37-45.1-103(4) and 37-45-118(1)(c),
 a water activity enterprise has the

 power to condemn private property in relation to water
 activities. We thus further conclude that, here, NISP
 Enterprise has the authority to condemn easements on VIMA
 Partners' land to survey, locate, construct, operate, and
 maintain pipelines and related infrastructure for the NISP
 because that work relates to water activities as defined by
 statute.

 ¶37
 Accordingly, we discharge our order to show cause and remand
 this case to the district court for further proceedings
 consistent with this opinion.

---------

[1] Specifically, the issue presented in
 this original proceeding is:

Whether, in a private condemnation action, a district
 court may allow a water activity enterprise formed under
 section 37-45.1-101, C.R.S. et seq., to condemn a
 landowner's private property when the enterprise lacks
 standing under any of the statutes on which it purports to
 rely, thereby irreparably depriving the landowner of its
 private property rights.

---------